COMMONWEALTH vs. ROBERT HAKKILA.

No. 96-P-710.

Middlesex. October 22, 1996. - January 30, 1997.

Present: ARMSTRONG, PERRETTA, & KASS, JJ.

*Practice, Criminal,* Instructions to jury, Deliberation of jury, Judicial
  discretion, Substitution of judge. *Self-Defense. Jury and Jurors.*

At the trial of a criminal case, there was no substantial risk of a miscar-
  riage of justice created by the judge's failure to have instructed the jury
  on her own motion on the issue of self-defense, where self-defense was
  not a theory on which the defendant relied at trial. [130-131]
A District Court judge, presiding at a criminal trial pursuant to Mass. R.
  Crim. P. 38(b), properly received a jury verdict arrived at on correct
  instructions and sufficient evidence: where there was no suggestion of
  extraneous influence on the jury, the judge correctly denied the
  defendant's motions for a mistrial and for a new trial. [131-132]

COMPLAINT received and sworn to in the Cambridge Divi-
sion of the District Court Department on March 24, 1995.

On transfer to the jury session of that division, the case
was tried before *Dyanne J. Klein,* J., and jury deliberations
were presided over by *Jonathan Brant,* J.

*James R. Knudsen* for the defendant.

*David W. Cunis,* Assistant District Attorney (*Karen Wells,*
Assistant District Attorney, with him) for the Common-
wealth.

KASS, J. Robert Hakkila appeals his conviction of assault
and battery on the grounds that the trial judge erred in (1)
failing to instruct the jury on self-defense; (2) failing im-
mediately to order the jury to stop deliberating after they
submitted questions; (3) accepting the jury's verdict before
their questions were addressed; and (4) denying the defen-
dant's motion for a new trial.

These are the relevant facts. Trial of the defendant in the

District Court before a jury of six began and concluded on October 17, 1995. The jury began deliberations but were unable to conclude them that day. Aware that she would not be present October 18, 1995, the trial judge arranged for another District Court judge to preside over the jury deliberations and to accept a verdict, if one were returned the following day.

Two hours into deliberations on day two, the jury submitted questions to the court. After reviewing the questions and discussing them with counsel, the substitute judge decided to reserve them for the trial judge when she returned the next day. When a court officer went to the jury deliberation room to impart this information to the jurors, they told him they were near the end of their deliberations. As we shall describe in some greater detail below, the jury returned a verdict of guilty.

1. *Instruction on self-defense.* Hakkila argues that the trial judge erred in failing to instruct the jury on self-defense. Trial counsel did not request such an instruction, nor did counsel object to the absence of such instruction before the jury began deliberations. Accordingly, we look only to see if there exists a substantial risk that a miscarriage of justice has occurred. See Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979), and *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

A defendant is entitled to a self-defense instruction when the evidence, viewed in the light most favorable to him, sufficiently raises the issue. *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980). *Commonwealth* v. *Morgan*, 422 Mass. 373, 383 (1996). Here, self-defense was not a theory on which the defendant relied at trial. Hakkila did not, as he might have, argue that: I didn't do it (namely, batter his former woman-friend) but if I did do it, it was self-defense. Rather, he flatly denied inflicting injuries, admitting only to placing her in a bear-hug. Although Hakkila testified that he feared she would reach his hobby table, on which sharp tools and model airplanes were placed, his testimony speaks more to concern about his "very, very expensive equipment" than his person. That view of the evidence accords with defense counsel's request, which the trial judge honored, for an instruction on defense of *property*. It was not incumbent upon the judge sua sponte to instruct the jury on a theory upon which the defense had placed no reli-

ance at trial. There was in Hakkila's testimony, indulgently read, only the germ of concern about his person.

2. *Jury deliberations, acceptance of the verdict, and the motion for a mistrial.* On the second day of deliberations, the jury submitted four questions to the court.[1] The substitute judge, who was unfamiliar with the record of the trial, concluded that the prudent course was to reserve the jury's questions for the judge who had presided over the trial. The substitute judge had not familiarized himself with the record of the trial, nor was he serving by reason of the death, sickness, or disability of the trial judge. See Mass.R.Crim.P. 38(a), 378 Mass. 916 (1979)[2] ; *Commonwealth* v. *Carter*, 423 Mass. 506, 513-514 (1996). When the court officer informed the jury that the judge was prepared to address them (some forty-five minutes had elapsed since the jurors had given a paper with their questions written on it to a court officer), they indicated that they were close to reaching a verdict and wanted five more minutes to deliberate and get to a vote. About ten minutes later, the jury signalled the court officer with a buzzer. He opened the door to the deliberation room, and the jury said they had arrived at a verdict. The court officer reported that news to the substitute judge, who asked the jury be brought to the courtroom. There the jurors returned a verdict of guilty. Under Mass.R.Crim.P. 38(b), 378 Mass. 916 (1979), the substitute judge could receive the verdict of the jury.

A trial judge has discretion in determining whether to suspend jury deliberations while considering their questions. *Commonwealth* v. *Collins*, 36 Mass. App. Ct. 25, 32-33 & n.6 (1994). See *Commonwealth* v. *Harvey*, 397 Mass. 351, 359-360 (1986). That a substitute judge was presiding pursuant to

---

[1]First, the jury wanted to know the elements of assault and battery (essentially a request for reinstruction). Second, the jury asked for a definition of reasonable doubt (again a request for reinstruction). Third, "If one feels that the defendant probably is guilty, but there is some question[] about the credibility of the victim's testimony, do we find the defendant not guilty?" Fourth, "What constitutes reasonable force in protecting oneself or personal property?"

[2]Rule 38(a) provides: "If by reason of death, sickness, or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge of that court or properly assigned to that court, upon certifying in writing that he has familiarized himself with the record of the trial, may proceed with and finish the trial."

Mass.R.Crim.P. 38(b), does not alter the discretion possessed by a judge in that regard.

In the final analysis, the jury, and not the judge or the lawyers, are "best suited to decide whether further instruction [is] necessary." *Commonwealth* v. *Harvey*, 397 Mass. at 360. That the jury asked questions at a certain point in their deliberations does not cause us to think that the jury, which had been appropriately instructed the day before, applied legal standards other than those about which they had been charged. See *Commonwealth* v. *Rosa*, 422 Mass. 18, 29 (1996). It is best not to dissect the inner workings of a jury's decision-making process. In the absence of extraneous influences[3] — and none are even suggested here — a court ought not to second-guess a verdict arrived at on correct instructions and sufficient evidence. The defense motions for a mistrial and for a new trial were rightly denied.

> *Judgment affirmed.*
>
> *Order denying motion for a new trial affirmed.*

---

[3]See *Commonwealth* v. *Fidler*, 377 Mass. 192, 201 (1979); *Commonwealth* v. *Laguer*, 410 Mass. 89, 96 (1991).