Commonwealth *v.* Galvin.

COMMONWEALTH *vs.* JUNE A. GALVIN.

No. 01-P-1454.

Plymouth. October 9, 2002. - December 11, 2002.

Present: CYPHER, SMITH, & GRASSO, JJ.

*Assault and Battery. Self-Defense. Evidence,* Self-defense. *Practice, Criminal,* Instructions to jury.

The judge at the trial of a criminal complaint alleging assault and battery erred in not instructing on self-defense, and this error gave rise to a substantial miscarriage of justice, where the evidence warranted a jury instruction on the use of nondeadly force in self-defense, in that it raised a reasonable doubt that the defendant had a reasonable concern for her safety and had no ability to retreat at the moment that the complainant struck and grabbed her. [699-703]

The evidence at a criminal trial was sufficient to warrant a jury concluding that the defendant committed an intentional assault and battery. [703]

COMPLAINT received and sworn to in the Wareham Division of the District Court Department on November 9, 2000.

The case was tried before *W. James O'Neill*, J.

*Robin Adler* for the defendant.

*Gail M. McKenna*, Assistant District Attorney, for the Commonwealth.

GRASSO, J. Defense counsel's failure to request jury instructions on the use of nondeadly force in self-defense is the focal point of this appeal from the defendant's conviction for assault and battery. The defendant contends that her conviction should be reversed because of counsel's deficiency and because the Commonwealth presented insufficient evidence of an intentional striking to withstand a motion for a required finding of not guilty. We reject the sufficiency of the evidence argument. We agree, however, that the defendant's conviction should be reversed because the judge erred in not instructing on self-defense and because this shortcoming gives rise to a substantial risk of a miscarriage of justice.

1. *The evidence as to self-defense.* Self-defense is a jury determination when the evidence, viewed in the light most favorable to the defendant, is sufficient to raise a reasonable doubt upon the issue. See *Commonwealth* v. *Maguire*, 375 Mass. 768, 769 (1978); *Commonwealth* v. *Epsom*, 399 Mass. 254, 257 (1987). The evidence bearing upon self-defense may be contained in the Commonwealth's case, the defendant's case, or the two in combination. See *Commonwealth* v. *Rodriguez*, 370 Mass. 684, 688 n.5 (1976).

Here, the defendant testified to what occurred. Compare *Commonwealth* v. *Toon*, 55 Mass. App. Ct. 642, 651 (2002), and cases cited. In the light most favorable to the defendant, the evidence was as follows. On September 11, 2000, the defendant, who was separated from her husband, drove with their two small children to see him and bring him some mail. Neither she nor the children had seen him in some time. Her husband had been living with the complainant, John Henault, and his family at 132 Pine Street, Middleborough, since April of 2000, and had separate quarters in the lower level of the Henault residence.[1] Prior to separating from her husband, the defendant had been a frequent visitor to the Henault residence.

En route, the defendant called her husband from her cellular telephone, but only made connection with his answering machine. Upon arriving in the driveway, the defendant observed her husband's truck parked in the back yard some distance away. She stopped her vehicle where Henault was standing and asked if her husband was home. When Henault said "No," the defendant responded that "his truck is here." Henault replied that her husband was not there. The defendant believed Henault was lying. The defendant began to drive off, but remembered that she had brought her husband's mail. Not observing Henault to be about, she left the children in the vehicle and walked to her husband's truck. Without dallying, she jumped into the truck and threw the mail into the center console. As she proceeded back to her car, she noticed that the door to her husband's living quarters was open. She thought she spied

---

[1]There was evidence that the defendant's husband's living quarters were "like his own apartment." He had his own entrance to the premises, paid rent, and had his own telephone and cable television service.

someone inside and decided to see if her husband was, in fact, there.

The defendant proclaimed that as she walked toward her husband's quarters, Henault suddenly attacked her from behind, slammed her in her back, and almost knocked her to the ground. She caught her balance, stood up, and asked him what he was doing. Henault responded by screaming profanities at her. Henault grabbed her in a hold with his foot against the back of her heel, one hand on her arm, and the other on the back of her neck. Her last recollection before blacking out was of Henault shoving her face to the ground. At no point that day did Henault ever ask her to leave.

Henault's version was entirely different. The defendant would not leave despite his repeated admonitions. He became frustrated and grabbed her arm to remove her from his property when she was about four feet inside the house. The Commonwealth's case was that the defendant had committed an assault and battery upon Henault when she clawed and scratched at him in response to her being stopped inside the house.

The evidence recounted was sufficient to warrant a jury instruction on the use of nondeadly force in self-defense, as it raised a reasonable doubt that the defendant (1) had a reasonable concern for her physical safety and (2) had no ability to retreat at the moment that Henault struck and grabbed her. See *Commonwealth* v. *Bastarache*, 382 Mass. 86, 105 & n.15 (1980). That a jury might well believe Henault and disbelieve the defendant is of no significance with regard to whether a self-defense instruction is warranted. See *Commonwealth* v. *Pike*, 428 Mass. 393, 395 (1998) ("In determining whether sufficient evidence of self-defense exists, all reasonable inferences should be resolved in favor of the defendant, and, no matter how incredible his testimony, that testimony must be treated as true"). Upon proper instruction, it would be for the jury to weigh credibility and decide whether the defendant's striking and clawing of Henault, the basis of the alleged assault and battery, was a valid exercise of self-defense for which she should be acquitted; was not self-defense at all, see *id.* at 397-398; or was an excessive response in self-defense. See *Commonwealth* v. *Harris*, 376 Mass. 201, 208-209 (1978) and cases cited. See

also *Commonwealth* v. *Toon*, 55 Mass. App. Ct. at 645 n.4 ("Whether the defendant used no more force than was reasonably necessary in all the circumstances is, 'ordinarily,' a factual determination for the jury once the defendant properly invokes the privilege to use self-defense by raising a reasonable doubt as to the first and second components [of self-defense]").

We recognize that a judge need not instruct regarding self-defense unless the evidence raises a reasonable doubt as to each of the predicate components (reasonable concern for personal safety; retreat or no reasonable avenue of escape; and no more force used than reasonably necessary in the circumstances). See *Commonwealth* v. *Pike*, 428 Mass. at 398-399. Compare *Commonwealth* v. *Paton*, 31 Mass. App. Ct. 460, 463-465 (1991) (judge not required to charge on self-defense, either upon request or sua sponte, where jury would be left to speculate on hypothesis not supported by evidence). We emphasize, however, that whether the evidence raises a reasonable doubt as to the predicates for self-defense is often a complex determination and that a trial judge should "err on the side of caution in determining that self-defense has been raised sufficiently to warrant an instruction." *Commonwealth* v. *Toon*, 55 Mass. App. Ct. at 644.

Because there was an evidentiary basis for a self-defense instruction, the judge should have instructed the jury on self-defense, sua sponte, even absent a request by defense counsel. See *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 748, 751 (1980); *Commonwealth* v. *Cromartie*, 11 Mass. App. Ct. 1003, 1004-1005 (1981). Failure to do so was error, and, upon this record, gives rise to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999).

Moreover, the impact of the error arising from the judge's failure to instruct on self-defense was magnified when, at a brief charge conference, the judge indicated, sua sponte, that he was going to instruct the jury upon the law of defense of property.[2] To this end, the judge instructed that "[i]f . . . a property owner . . . . tell[s] somebody who doesn't have any

---

[2]Whatever implausible reason might have existed for defense counsel's not requesting a self-defense instruction dissipated entirely in the face of the judge's declaration that he was going to instruct on defense of property and his statement that "I don't see a self-defense issue here."

other right to be there to get off their property, that person could be called a trespasser. . . . A person may use reasonable force . . . to remove a trespasser from their property after the trespasser has been requested to leave and has refused to do so. It is for you to say how relevant that may be to the circumstances of this case." See *Commonwealth* v. *Donahue*, 148 Mass. 529, 531-532 (1889) (person may use reasonable force to protect his or her possession of real or personal property); *Commonwealth* v. *Haddock*, 46 Mass. App. Ct. 246, 249-250 (1999) (person may use only force that is reasonable to regain possession of personal property or to protect property).

A defense of property instruction was, strictly speaking, inapposite as to whether the defendant had committed an assault and battery. The defendant, not Henault, was charged with assault and battery, so a defense of property instruction directed toward Henault's conduct was both unnecessary and misleading. Compare *Commonwealth* v. *Hakkila*, 42 Mass. App. Ct. 129, 130 (1997). The instruction inappropriately shifted the jury's attention from what should have been its proper focus (whether the defendant intentionally struck Henault, without excuse in law, or whether such striking was excused by self-defense) and relieved the Commonwealth of the burden of proving that any one of the predicates for self-defense was absent, viz., that the defendant (1) did not have a reasonable apprehension for her physical safety; (2) had not availed herself of the opportunity to retreat before resorting to physical force; or (3) had used more force than was reasonably necessary. See *Commonwealth* v. *Rodriguez*, 370 Mass. at 687-688; *Commonwealth* v. *Johnson*, 426 Mass. 617, 620 (1998). An instruction about Henault's defense of his property was relevant, if at all, only contextually, and was misguided without concomitant instruction on trespass and the defendant's right, if any, to be on the premises.[3] Compare *Commonwealth* v. *Peloquin*, 437 Mass. 204, 208 (2002) ("It is

---

[3]In other circumstances, whether the defendant was a trespasser might bear upon the duty to retreat and whether the defendant was justified in remaining in the face of a demand that she leave. See *Commonwealth* v. *Toon*, 55 Mass. App. Ct. at 654 ("We need not decide whether . . . a right to remain might justify an unwillingness to back down in the face of an unreasonable demand to leave"). Here, the defendant denied completely that she had been directed to leave by Henault.

generally for the jury to determine whether the victim in a particular case was, in fact, unlawfully present in a dwelling, and the judge may instruct on the law of trespass to assist the jury in this determination"). Moreover, the defense of property instruction given by the judge suggested, if not directed, that the defendant was, in fact, a trespasser *without* requiring such proof from the Commonwealth.[4]

2. *The sufficiency of the evidence.* The Commonwealth presented sufficient evidence that the defendant had committed an intentional assault and battery upon Henault. Viewed in the light most favorable to the Commonwealth, *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), the evidence permitted the conclusion that after Henault ordered the defendant to leave the property, she returned and was going through the glove box of her estranged husband's truck. When Henault again ordered her to leave the yard, she nevertheless ran into her husband's living quarters. After being stopped by Henault, she flailed, clawed, and swung at him about ten times. She poked him in the eye and scratched his neck with her fingernails, leaving three long red scratch marks. Such evidence is more than ample for a jury to conclude that the defendant intentionally committed an assault and battery upon Henault. See *Commonwealth* v. *Bastarache*, 382 Mass. at 105 & n.15.

> *Judgment reversed.*
> *Verdict set aside.*

---

[4]Defense counsel's failure to request a self-defense instruction was manifestly unreasonable and deprived the defendant of an available, substantial ground of defense. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). The defendant's contention that she blacked out after being grabbed by Henault was not inconsistent with self-defense. Compare *Commonwealth* v. *Vezina*, 13 Mass. App. Ct. 1002 (1982) (self-defense instruction not required where defendant entirely denies having struck victim). Neither can it be deemed a reasonable tactical choice. The defendant's testimony reflected more than a mere "germ of concern" for her safety and well-being. See *Commonwealth* v. *Hakkila*, 42 Mass. App. Ct. at 130-131.