COMMONWEALTH *vs.* MARIA A. MIRANDA.

No. 08-P-2094.

Middlesex. February 23, 2010. - June 21, 2010.

Present: LENK, MILLS, & GRAINGER, JJ.

*Defense of Others. Self-Defense. Practice, Criminal,* Instructions to jury.

At the trial of a criminal complaint charging the defendant with assault and
battery on a police officer, the judge erred in declining to instruct the jury
on defense of another, where the Commonwealth's version of the evidence
showed that the defendant used force (i.e., she grabbed a State trooper's
arm during his scuffle with a third person) for the protection of the third
person, and where the evidence, viewed in the light most favorable to the
defendant, suggested that a reasonable person in the defendant's position
could believe that her intervention was necessary to protect the third
person, and that the third person could have been justified in using force to
protect herself; therefore, given that the error was preserved and the prejudice
was obvious, this court reversed the conviction. [78-81]

COMPLAINT received and sworn to in the Somerville Division
of the District Court Department on September 6, 2006.

The case was tried before *Robert A. Cornetta,* J.

*Lois J. Martin* for the defendant.

*Stephen C. Hoctor,* Assistant District Attorney, for the
Commonwealth.

MILLS, J. A jury convicted the defendant of assault and bat-
tery on a police officer, G. L. c. 265, § 13D. She appeals, claim-
ing that (1) the judge erred in not instructing the jury on defense
of another, and (2) the prosecutor made improper references to
a codefendant who had pleaded guilty and was no longer a
party. Because we conclude that the judge should have instructed
the jury on defense of another, we reverse.

*Background.* The testimony at trial revealed the following.
On September 6, 2006, after drinking alcohol with Demetria
Battle, the defendant was waiting in the driver's seat of her

sport utility vehicle (SUV) in a parking lot in Somerville. State Trooper Brian Sweet noticed that the SUV's headlights were off, approached the vehicle, and asked the defendant for her license and registration. He noticed indicia of alcohol impairment, and the defendant admitted that she had been drinking. At the trooper's request, she got out of and walked to the front of the SUV.

At this point, Battle approached the back of the SUV. She was angry, yelled at Trooper Sweet, and then walked away. She returned shortly thereafter and joined the trooper and the defendant, who were at the front of the SUV. Battle became increasingly agitated and hostile, continued yelling at the trooper, took out her cellular telephone, and began recording the trooper's interaction with the defendant. Trooper Sweet testified that Battle also showed indicia of alcohol impairment and that he became concerned for his own safety as well as the safety of the defendant. He told Battle to either sit in the SUV or leave the area. The defendant coaxed her into the vehicle.

Trooper Sweet then attempted to administer field sobriety tests to the defendant. Trooper Carl Johnson, who had arrived at the scene, parked behind Trooper Sweet's cruiser. As he approached, Battle got out of the SUV and began yelling and pointing her finger at both troopers. Trooper Sweet testified that Battle was extremely agitated and hostile and that he was concerned for the safety of everyone present. He decided to place Battle in protective custody and ordered her to put her hands behind her back. She initially complied, but after he placed a handcuff on her left wrist, she attempted to twist and pull away. Battle then dropped to the ground and attempted to free herself from his grasp. Trooper Sweet testified that while they were on the ground, Battle kicked him approximately eight times, and during the scuffle, the defendant ran from the front of the SUV, grabbed his left arm, and pulled on it as he was attempting to handcuff Battle. Trooper Sweet further testified that he was concerned that the defendant could access his firearm, so he pushed her away and observed her fall onto the sidewalk.

The defendant offered a somewhat different version of events and testified to the following. While Battle was yelling and screaming, Trooper Sweet tried to restrain her. He grabbed Battle's arm, threw her to the ground, flipped her over, and kneeled

on her back. The trooper had one knee on top of Battle's back, with her face on the ground. Battle screamed, "You're hurting me," and the defendant screamed two or three times, "Sir, you're hurting her." The defendant also screamed, "Sir, you are hurting her. Can you please get off of her." She testified that she believed the trooper was rough with Battle, and she was concerned about her own safety. She explicitly testified that she did not grab the trooper's arm, and that after the trooper placed Battle in custody, he grabbed the defendant's arm, twisted it, and threw her to the ground.

*Discussion.* The defendant argues that the judge erred in declining to instruct the jury on defense of another. We note that because "defense of another tracks the elements of self-defense," *Commonwealth* v. *McClendon*, 39 Mass. App. Ct. 122, 126 (1995), we apply familiar principles in determining whether the requested instruction was warranted. "A defendant is entitled to a [defense of another] instruction if any view of the evidence would support a reasonable doubt as to whether the prerequisites of [defense of another] were present." *Commonwealth* v. *Pike*, 428 Mass. 393, 395 (1998). In making this inquiry, "all reasonable inferences should be resolved in favor of the defendant, and, no matter how incredible [her] testimony, that testimony must be treated as true." *Ibid.*

An apparent inconsistency emerges when we seek to apply these instructions to the facts of this case. The defendant claims she did not grab Trooper Sweet's arm, while the Commonwealth's evidence was that she did. If the defendant's testimony must be treated as true, defense of another was not available because she never grabbed the trooper's arm. See *Commonwealth* v. *Martin*, 369 Mass. 640, 649 (1976) (defense of another requires, in part, that an actor use "force against another to protect a third person"). If, however, we apply the "any view of the evidence" standard, then a defense of another instruction may have been warranted based, in part, upon the Commonwealth's evidence.[1]

We conclude that the "any view of the evidence test" should be applied in this case. To the extent that some cases utilize

---

[1]For cases relying on the "any view of the evidence" test and similar formulations, see *Commonwealth* v. *Monico*, 373 Mass. 298, 299 (1977) ("if any view of the evidence would provide support for an affirmative defense, a defendant is entitled to such an instruction"); *Commonwealth* v. *Lopes*, 440

language suggesting we treat the defendant's story as true, the "any view of the evidence" standard is not abrogated. In those cases, the defendant claimed facts consistent with the requested instruction. That is not the situation here.

Our conclusion that the "any view of the evidence" test is the controlling principle, notwithstanding language in other cases that could be perceived to the contrary, is supported by the notion that judges should "err on the side of caution in determining that self-defense has been raised sufficiently to warrant an instruction." *Commonwealth* v. *Galvin*, 56 Mass. App. Ct. 698, 701 (2002), quoting from *Commonwealth* v. *Toon*, 55 Mass. App. Ct. 642, 644 (2002). Further, we note that "[t]he evidence bearing upon self-defense may be contained in the Commonwealth's case, the defendant's case, or the two in combination." *Commonwealth* v. *Galvin*, *supra* at 699. See *Commonwealth* v. *Santos*, 454 Mass. 770, 773 (2009) ("[t]he defendant is entitled to an instruction on self-defense with a dangerous weapon if the evidence, *from any source*, would warrant a finding in [her] favor on that issue" [emphasis added]). Thus, the defendant's testimony that she never touched the trooper does not preclude a defense of another instruction in this case.

We next examine whether there was a factual predicate for a defense of another instruction based upon any view of the evidence. "An actor is justified in using force against another to protect a third person when (a) a reasonable person in the actor's position would believe [her] intervention to be necessary for the protection of the third person, and (b) in the circumstances as that reasonable person would believe them to be, the third person would be justified in using such force to protect [her]self." *Commonwealth* v. *Martin*, 369 Mass. at 649.

The Commonwealth's version of the evidence, namely that

Mass. 731, 740 (2004); *Commonwealth* v. *Brum*, 441 Mass. 199, 206 (2004); *Commonwealth* v. *Haith*, 452 Mass. 409, 415-416 (2008); *Commonwealth* v. *Galvin*, 56 Mass. App. Ct. 698, 700-701 (2002); *Commonwealth* v. *Consoli*, 58 Mass. App. Ct. 734, 736 n.5 (2003).

For cases relying on language suggesting we treat the defendant's story as true, see *Commonwealth* v. *Vanderpool*, 367 Mass. 743, 746 (1975), quoting from *Commonwealth* v. *Campbell*, 352 Mass. 387, 398 (1967) (court must consider the defendant's testimony "based upon the hypothesis that it is entirely true"); *Commonwealth* v. *Brown*, 387 Mass. 220, 227 (1982).

the defendant grabbed Trooper Sweet's arm during his scuffle with Battle, shows that the defendant used force for the protection of Battle. Further, in the light most favorable to the defendant, a reasonable person in the defendant's position could believe that her intervention was necessary to protect Battle. The defendant testified that the trooper had thrown Battle to the ground and that she was lying face down with the trooper's knee on her back. Further, the defendant testified that the trooper was rough with Battle, that he was hurting her, and that she, the defendant, feared for her own and Battle's safety.[2]

Finally, in the light most favorable to the defendant, the evidence suggests that Battle could have been justified in using force to protect herself. An individual may resist an arrest if excessive force is used in effectuating the arrest. *Commonwealth* v. *Urkiel*, 63 Mass. App. Ct. 445, 448 (2005). In this case, the jury could have believed that the trooper used excessive force. See *Commonwealth* v. *Graham*, 62 Mass. App. Ct. 642, 652 (2004).

Further, even though Battle may have been the initial aggressor, the jury could have found that Trooper Sweet's use of excessive force restored her right to self-defense. See generally *Commonwealth* v. *Evans*, 390 Mass. 144, 153-154 (1983) (victim did not use excessive force and thus court declined to consider whether the defendant's right to self-defense may have been restored); *Commonwealth* v. *Naylor*, 407 Mass. 333, 335 & n.3 (1990) (noting that although self-defense was not available to the defendant because he was the initial aggressor, "[a] different conclusion might result if the [victim] used excessive force").[3]

---

[2]As discussed above, it does not matter that a portion of the evidence supporting defense of another came from the trooper's testimony while another portion of the evidence came from the defendant's testimony. See *Commonwealth* v. *Galvin, supra* at 699.

[3]The Commonwealth relies on *Commonwealth* v. *Brum*, 441 Mass. at 208, for the proposition that an initial aggressor who has not withdrawn has no viable claim of self-defense. We read that case somewhat differently.

In *Commonwealth* v. *Brum*, the court relied on the well-settled principle that the defendant, an initial aggressor who had failed to withdraw, did not have a right to self-defense. However, that court did not have occasion to address whether an initial aggressor's right to self-defense may be restored by virtue of a victim's use of excessive force. Thus, *Commonwealth* v. *Brum* is not controlling on that issue.

We conclude that this result flows logically from *Commonwealth* v. *Evans, supra,* and *Commonwealth* v. *Naylor, supra.*

The judge's failure to instruct on defense of another was error and because it was preserved,[4] we review under the familiar prejudicial error standard. See *Commonwealth* v. *Flebotte,* 417 Mass. 348, 353 (1994), quoting from *Commonwealth* v. *Peruzzi,* 15 Mass. App. Ct. 437, 445 (1983) (an error is nonprejudicial only if we are "sure that the error did not influence the jury, or had but very slight effect"). The prejudice here is obvious because the jury could have acquitted the defendant based upon defense of another if they chose to believe the evidence supporting that defense. Further, questions from the jury during deliberations suggest that they were considering whether the defendant's actions may have been justified based on defense of another.[5] Compare *Commonwealth* v. *Green,* 55 Mass. App. Ct. 376, 380-381 (2002) (failure to instruct on defense of another not prejudicial when jury rejected defendant's self-defense argument).

Because we conclude that the defendant's conviction must be reversed, we need not consider her argument that the prosecutor made inappropriate references to Battle during the course of trial.

*Judgment reversed.*

*Verdict set aside.*

---

[4]Defense counsel requested, and the judge denied, a defense of another instruction both at the conclusion of trial and after the judge received a second set of questions from the jury.

[5]Shortly after beginning deliberations, the jury submitted questions requesting review of the elements of the charged offenses and for "clarification of what is allowed by law for a citizen if they believe an officer is potentially injuring someone arrested." The judge reinstructed on the elements of the offenses, police privilege, and a citizen's right to resist an arrest effectuated with excessive force.

At some point thereafter, the jury submitted a second set of questions requesting a review of the elements of resisting arrest and assault and battery on a police officer. The judge denied defense counsel's explicit request for a defense of another instruction and reinstructed on the elements of those offenses.