The defendant, Orlando J. Cornier, Jr., appeals from convictions of multiple firearms offenses.[2] We affirm all but the conviction of illegal possession of ammunition, which must be vacated as duplicative of the conviction of carrying a loaded firearm.
Background. We recite the basic facts as the jury could have found them, reserving other facts for later discussion. On June 2, 2014, the defendant stood in the driveway of his residence in Taunton, arguing with his former girl friend. Three of the defendant's friends, including Bessley Vasquez, looked on. Ann Haelsen, the defendant's neighbor, was gardening from the back steps of her residence. She lived on the second floor of the building and Vasquez lived on the first. Haelsen and Vasquez's building is set "[ten] or [twenty] yards" behind the defendant's home; from the back steps Haelsen had a clear view of the defendant's driveway and the events that transpired.
Haelsen observed a sports utility vehicle (SUV) slow down in front of the defendant's house and then speed away. Vasquez ran in and back out of his residence, tucking something into his pants and returning to the defendant's driveway. Haelsen then saw two men at the back gate of the park located directly across the street from the defendant's home. One of the men at the gate made a motion like he was going to fire a gun, and Haelsen simultaneously heard "two or three pops."
Vasquez made a motion of tossing something to the defendant. The defendant made a catching motion, walked into the middle of the street, held his arms straight out in front of him with his hands clasped together, and fired "a few" shots toward the men at the gate. The defendant then moved closer to the park and fired "a couple more" shots. The men at the park ran away, and the defendant ran back into his house.
The police recovered six nine millimeter cartridge casings and two spent projectiles near the defendant's residence; at least four of the six casings were fired from the same gun. Haelsen never saw a gun in the defendant's hand, and the police never recovered the gun used in the shooting.
Discussion. 1. Sufficiency of evidence. " 'Firearm' is defined in [G. L.] c. 140, § 121, to mean a 'pistol, revolver or other weapon of any description loaded or unloaded, from which a shot or bullet can be discharged and of which the length of barrel is less than sixteen inches.' " Commonwealth v. Sampson, 383 Mass. 750, 753 (1981). The defendant argues that the Commonwealth presented insufficient evidence to prove beyond a reasonable doubt that the barrel length of the gun fired by the defendant was less than sixteen inches, and the judge should have prevented his firearm related charges from reaching the jury. "We review a denial of a motion for a required finding of not guilty to determine whether, viewing the evidence in the light most favorable to the Commonwealth, there is sufficient evidence for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Bruneau, 472 Mass. 510, 518 (2015), citing Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). "The burden on the Commonwealth in proving that the weapon is a firearm in the statutory sense is not a heavy one." Commonwealth v. Nieves, 43 Mass. App. Ct. 1, 2 (1997).
Haelsen testified that Vasquez tucked an object into his pants and then tossed something to the defendant, who caught it and began shooting at the men across the street. See Commonwealth v. Evans, 439 Mass. 184, 198 (2003) ( "Because [the defendant] removed the gun from his pocket, the grand jury could have inferred that the barrel length was less than sixteen inches"); Commonwealth v. Sylvester, 35 Mass. App. Ct. 906, 907 (1993) (jury could infer "hand held weapon" was firearm). Haelson testified that the defendant fired the object by clasping his hands together and holding them in front of him. See Commonwealth v. Manning, 44 Mass. App. Ct. 695, 707 (1998) (defendant's stance and ability to conceal weapon permitted inference its barrel was sixteen inches or less); Commonwealth v. Naylor, 73 Mass. App. Ct. 518, 525 (2009) (size of firearm inferred from close proximity of defendant and victim and "the absence of any statement by either victim of having seen a barrel"). Six nine millimeter casings were recovered from the crime scene, and Detective Michael Bonenfant stated, based on his experience with nine millimeter guns, that their barrels tend to be four and one-half inches in length.
Although the Commonwealth did not present the jury with the gun the defendant used, the Commonwealth presented sufficient circumstantial evidence for a rational trier of fact to "conclude beyond a reasonable doubt that the gun in question was not a weapon with a barrel sixteen inches long or longer." Commonwealth v. Sperrazza, 372 Mass. 667, 670 (1977).
2. Expert opinion from lay witness. As noted, Bonenfant testified that the typical barrel length of a nine millimeter firearm is four and one-half inches. The Commonwealth did not move to qualify Bonenfant as an expert before eliciting this opinion. Although the defendant raised no objection to this testimony at trial, he now contends as an independent ground for reversal that the judge should not have allowed Bonenfant to testify about the barrel lengths of nine millimeter guns without qualifying him as an expert. We address this argument under the substantial risk of a miscarriage of justice standard. See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).
We conclude there was no error. The judge did not make an express ruling on Bonenfant's qualifications; "[h]owever, the fact that the officer's qualifications had previously been laid out, and the judge's allowance of his testimony, clearly imply a prior determination by the judge that the witness was qualified, through his experience and training, to offer an opinion." Leibovich v. Antonnellis, 410 Mass. 568, 571-572 (1991). "It was not necessary for the judge expressly to qualify [Bonenfant] as an expert." Commonwealth v. Ruiz, 442 Mass. 826, 834 (2004). Moreover, had the defendant timely objected, the Commonwealth likely could have laid the foundation for Bonenfant to offer his opinion, and it would have been within the judge's discretion to admit it. See Commonwealth v. Robinson, 449 Mass. 1, 5 (2007) ("A judge has broad discretion regarding the admission of expert testimony, and we review that decision only for abuse of discretion").
3. Prosecution's opening statement. The defendant contends that the prosecutor improperly undermined the jury's function during his opening statement by invoking "the collective common sense of the public," and that the judge compounded the error when he stated in his preliminary instructions that the jury should "determine the facts as a group." "Because there was no objection to the prosecutor's opening statement, we review the defendant's claim only to ascertain whether any error created a substantial risk of a miscarriage of justice." Commonwealth v. Oliveira, 74 Mass. App. Ct. 49, 56 (2009).
We discern no error. The prosecutor began his statement by describing what he intended to prove beyond a reasonable doubt and concluded by asking the jury to apply their common sense, stating that "[t]he most important thing you as a jury bring here is the collective common sense of the public." "Such an evocation was entirely proper." Commonwealth v. Achorn, 25 Mass. App. Ct. 247, 250 (1988).[3] "There was no error and, thus, no risk that justice miscarried." Oliveira, supra.
4. Affirmative defense instructions. The defendant claims that the judge should have instructed the jury on the theories of defense of another, self-defense, and necessity, and that his failure to do so created a substantial risk of a miscarriage of justice. We disagree.
The judge did not give such affirmative defense instructions because defense counsel did not request them. Indeed, the judge inquired whether the defendant wanted an instruction on self-defense and defense of another, but defense counsel, after consulting with the defendant, specifically declined, explaining that these affirmative defenses would be inconsistent his trial strategy: "No one saw a gun. No one put a gun in my client's hands. I think we'd go along with that. You have to keep the instruction out." The defendant "did not, as he might have, argue that: I didn't do it [namely, possess or fire a gun]; but if I did do it, it was self-defense." Commonwealth v. Hakkila, 42 Mass. App. Ct. 129, 130 (1997). Counsel's decision "was an informed exercise of his prerogative to decide on the defense strategy." Commonwealth v. Kolenovic, 471 Mass. 664, 675 (2015).[4]
"It was not incumbent upon the judge sua sponte to instruct the jury on a theory upon which the defense had placed no reliance at trial." Hakkila, supra at 130-131.[5] The fact that the judge did not instruct on self-defense, defense of another, or necessity "cannot be claimed to create a substantial risk of a miscarriage of justice where it is not relevant to the defendant's chosen trial strategy." Commonwealth v. Lazarovich, 410 Mass. 466, 476 (1991). "Appellate review should not be the occasion to convert the 'consequences of unsuccessful trial tactics and strategy into alleged errors by the judge.' " Ibid., quoting from Commonwealth v. Johnson, 374 Mass. 453, 465 (1978).
Finally, the defendant contends that he is entitled to a new trial on the ground that "justice may not have been done." Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001). See Commonwealth v. Brescia, 471 Mass. 381, 382 (2015) ; Commonwealth v. Rosario, 477 Mass. 69, 77 (2016). We disagree. This is not one of those "rare cases," ibid., in which "[t]he fairness of the defendant's trial was hampered by an extraordinary confluence of factors." Brescia, supra at 396.
5. Officer's familiarity with the defendant. Officer Brian Dunham testified, over objection, that he was "familiar" with "a couple" of the defendant's friends, and Sergeant Matthew Skwarto testified, over objection, that after receiving an arrest warrant for the defendant, detectives went to locations, residences, and places where they had seen him in the past. The defendant argues that this testimony amounted to bad character or criminal propensity evidence, was wrongly admitted, and resulted in prejudice requiring a new trial. We disagree.
The judge did not err in admitting the officers' statements. It is true that "[a]ssociational evidence ... is suspect." Commonwealth v. Gonzalez, 47 Mass. App. Ct. 255, 259 (1998). However, any inference from the officers' statements that the defendant associated with criminals or engaged in prior bad acts is tenuous at best. The testimony was far less suggestive than in Gonzales, where the officer testified that he knew the defendant from "dealing with [him] in the past." Ibid. Neither officer characterized the defendant's friends or known past locations as persons or places associated with criminal activity. Contrast Commonwealth v. Szemetum, 3 Mass. App. Ct. 651, 653 (1975) ("It was error to admit the testimony that arrests had been made for the sale of heroin in the area and that the defendant had been seen in that area on previous occasions").
Even if the judge erred by admitting the statements in evidence, they were "isolated and not adverted to in closing arguments. Insufficient prejudice attached to the remark[s] to have [them] constitute reversible error." Gonzalez, supra.
6. Duplicative convictions. The defendant contends that his conviction of unlawful possession of ammunition under G. L. c. 269, § 10(h ), was duplicative of his conviction of unlawfully carrying a loaded firearm under G. L. c. 269, § 10(n ). We agree, as does the Commonwealth. In the circumstances of this case, the former conviction was a lesser-included offense of the latter. The defendant's conviction of the lesser-included offense, unlawful possession of ammunition, should be vacated. See Commonwealth v. Johnson, 461 Mass. 44, 54 (2011).
The defendant was not sentenced on the lesser-included offense; it was placed on file at the conclusion of the trial. Normally, a defendant is not entitled to appellate review of charges placed on file with his consent. See Commonwealth v. Delgado, 367 Mass. 432, 438 (1975). However, the record does not demonstrate that the judge conducted the colloquy required by Mass.R.Crim.P. 28(e), 453 Mass. 1501 (2009), or that the defendant consented to the filing, either orally or in writing. Accordingly, the judgment on the duplicative conviction of unlawful possession of ammunition is to be removed from the file and vacated, the verdict set aside, and the charge dismissed. Because the defendant was not sentenced on this charge, a remand for resentencing is unnecessary.
Conclusion. On count one of the complaint, charging unlawful possession of ammunition, the judgment is to be removed from the file and vacated, the verdict is set aside, and that count is dismissed. The judgments on the remaining counts are affirmed.
So ordered.
Vacated in part, affirmed in part.

Possession of ammunition without an FID card, G. L. c. 269, § 10(h )(1) ; carrying a loaded firearm without a license, G. L. c. 269, § 10(n ) ; carrying a firearm without a license, G. L. c. 269, § 10(a ) ; and discharging a firearm within 500 feet of a building, G. L. c. 269, § 12E.

Indeed, defense counsel began his closing argument with a similar statement: "Ladies and gentleman, ... I'm going to ask you to use your common sense." See Achorn, supra.

Nothing in the record indicates that counsel's decision in this regard was manifestly unreasonable. Indeed, the defendant specifically eschews any claim of ineffective assistance.

In a postargument letter, the defendant called our attention to Commonwealth v. Souza, 428 Mass. 478, 486 (1998), which quotes Commonwealth v. Torres, 420 Mass. 479, 492 (1995), for the proposition that "a judge 'must instruct on self-defense in a homicide case' " if the evidence supports the instruction. In Torres, however, defense counsel had requested instructions on self-defense and defense of another. See Torres, supra at 482. The court in Souza, supra, further stated that "a defendant's trial strategy is respected" and that "there was no requirement that the judge give a self-defense instruction because there was no such request from the defendant or the Commonwealth."
The question presented in Souza was "whether a defendant may veto a self-defense instruction" in a case where the instruction was warranted, and whether giving the instruction over the defendant's objection was error. Ibid. The court ultimately did not reach the issue, concluding that the self-defense instruction was not prejudicial. See id. at 486-488. Souza reinforces our view that, having exercised his veto, the defendant cannot now be heard to argue that the judge should have overridden it.