The defendant, Michael Kozakiewicz, was convicted of reckless assault and battery by means of a dangerous weapon (motor vehicle) (ABDW), G. L. c. 265, § 15A(b ), and assault and battery, G. L. c. 265, § 13A(a ). Before us are the consolidated appeals from his convictions and the denial of a subsequent motion for a new trial. The defendant argues that the ABDW conviction was unsupported by legally sufficient evidence and that judgment should enter for him on that count; alternatively, he contends that the case should be remanded for a new trial due to various errors by the trial judge and the prosecutor's failure to timely disclose exculpatory evidence. We hold that the ABDW conviction was supported by legally sufficient evidence and that the trial judge did not commit reversible error, but vacate the ABDW conviction due to the prosecutor's inadvertent failure to timely disclose exculpatory evidence. We affirm the conviction of assault and battery.
Background. The defendant married Nahomie Prophete, the only Commonwealth witness, on November 8, 2011, in Montclair, New Jersey. They separated soon after their marriage, and Prophete moved to Brockton to live with extended family; the defendant stayed in Montclair. While they were separated, the defendant would take the bus to Brockton to visit on occasion. One of these visits occurred on May 26, 2012. At the time, Prophete was pregnant with the defendant's child, but it was disputed at trial whether the defendant knew this. Prophete picked the defendant up from the bus station in Boston in a sport utility vehicle (SUV) and drove him to Brockton. The two of them then returned to Boston for a recreational trip with some of Prophete's family members. Some conflict occurred on the trip, and, when they got back to Brockton, the defendant said that he wanted to drive home.
A scuffle ensued over whether the defendant could take the SUV. The defendant believed he was entitled to take the SUV because he had purchased it and had driven it to Brockton in a past visit only so Prophete could have more mobility while interviewing for a job. According to Prophete, the defendant had no such right because she, not he, had bought the SUV, it was registered in her name, he had another vehicle in Montclair, and she needed it for work.
The scuffle began inside the house as a fight for the keys to the SUV. Prophete testified that she had initial control of the keys, which the defendant attempted to wrest from her. During the struggle, he put her in a chokehold, and eventually ended up with the keys. The defendant, meanwhile, testified that he took the keys from the kitchen counter, and, while he was gathering his belongings, Prophete attacked him by scratching him, ripping his shirt, kicking him, biting him, and hitting him with a hammer and screwdriver. Prophete testified that she did not remember doing these things but that any marks on the defendant would have resulted from her attempting to defend herself.
The struggle moved outside. Prophete testified that she managed to exit the house with the keys and reach the vehicle, which she intended to drive away. According to Prophete, before she could do so, the defendant reached the car and smashed her head against the steering wheel. She ran into the house to call the police but left the keys in the ignition. The defendant initially followed her into the house, but then went back to the car to drive it away. He put it in reverse and Prophete jumped into the passenger seat. Half her body was outside the car as he reversed and drove it around the corner. He started driving the car forward and pushed her out of it, then reversed and drove it over her legs. The medical records reflect that Prophete stated at the hospital that her husband ran over only her right leg.
The defendant's version of the final portion of these events is very different. He left the house with the keys, entered the SUV, and started the car. Prophete tried to remove the key from the ignition and physically tried to prevent him from moving the SUV. Despite this, he was able to put the SUV in reverse. Prophete continued to struggle with him and he lost control of the vehicle. The SUV hit the curb and Prophete fell out, having failed to close the passenger side door when she entered the vehicle. The defendant denied hitting Prophete's head on the steering wheel, pushing her out of the car, or running over her leg.
The defendant drove back to New Jersey and never visited Prophete again. Prophete was taken to a hospital. Medical records from her visit, which were admitted at trial, show various abrasions and contusions on her thighs and elbows. They also show that "[t]here is tenderness in the tib. fib. region as well as in the ankle," but there was neither "significant edema" nor any sign of fracture. Her "gait [was] impaired." The defendant introduced photos of his injuries that show scratches, bruises, and a human bite mark.
A criminal complaint issued on May 29, 2012, charging the defendant with ABDW and assault and battery on a pregnant person, G. L. c. 265, § 13A(b )(ii), but the defendant testified that he did not become aware of the charges until July 14, 2015. By that point, Prophete had given birth to their child and filed for divorce. Her ground for divorce was the cruel and abusive treatment she suffered during the incident. On the day of trial, April 25, 2016, Prophete invoked her privilege against self-incrimination and her marital privilege. Because Prophete was the only Commonwealth witness, the case was dismissed. However, the Commonwealth refiled the complaint on May 17, 2016, apparently upon Prophete's request. At the trial that eventually occurred, the judge prohibited defense counsel from inquiring into Prophete's reasons for invoking her privileges or asking the Commonwealth to refile the complaint.
At 8:55 P.M. on the first day of the two-day trial, Prophete's cousin sent an electronic mail message (e-mail) to the victim-witness advocate assigned to the case containing photos of Prophete's injuries taken while in the hospital. The photos are consistent with the medical records, but there are no photos that focus on Prophete's right leg. The victim-witness advocate forwarded the e-mail to the prosecutor at 8:30 the next morning. Deliberations began at 12:37 P.M. , and the prosecutor e-mailed the photos to defense counsel at 1:25 P.M. , later explaining in an affidavit, credited by the motion judge, that this was when he first learned that the prosecution possessed them. The victim-witness advocate had informed him of the existence of the photographs, but not the Commonwealth's possession of them, in person before the second day of trial began. Sometime between then and 1:47 P.M. , when the jury returned with a question, the prosecutor handed defense counsel photocopies of the photos. The jury returned verdicts of guilty of ABDW (motor vehicle) under a recklessness theory and guilty of the lesser included offense of assault and battery on the count of assault and battery on a pregnant person. The verdict slip indicates that the jury found that the defendant assaulted and battered Prophete by pushing her out of the car, rather than by either striking her head against the steering wheel or grabbing the keys from her hands, which were the other two acts that were listed as possible support for a guilty verdict of assault and battery. The defendant moved for a new trial based on the prosecutor's failure to timely disclose specifically requested exculpatory evidence, having previously requested "[a]ll photographs taken in connection with this case." His motion was denied after a hearing. This appeal followed.
Discussion. 1. Sufficiency of the evidence of ABDW. In assessing the sufficiency of the evidence, we consider whether the evidence, viewed in the light most favorable to the Commonwealth, could satisfy a rational trier of fact of each element of the crime beyond a reasonable doubt. See Commonwealth v. Latimore, 378 Mass. 671, 676-678 (1979). Under the Commonwealth's theory of the case as presented to the jury, the only conduct that can support the conviction of ABDW is the defendant's running over Prophete's leg with the SUV.[2]
The defendant first argues that there was insufficient evidence of recklessness. This argument fails. To prove recklessness, the Commonwealth must show that "the defendant's conduct involve[d] a high degree of likelihood that substantial harm will result to another, ... or that it 'constitute[d] ... a disregard of probable harmful consequences to another.' " Commonwealth v. Welch, 16 Mass. App. Ct. 271, 275 (1983) (citations omitted). A jury clearly could infer recklessness from Prophete's testimony that the defendant continued to drive after pushing her out of the car. The jury also were not required to infer that his conduct was intentional; a rational juror could have concluded that the defendant did not know that Prophete was under the car, but disregarded the substantial probability that she was.
The defendant further argues that there was insufficient evidence that Prophete was injured by contact with the motor vehicle. To satisfy the injury prong, "the Commonwealth must prove an injury that interfered with the health or comfort of the victim. It need not have been permanent, but it must have been more than transient and trifling." Commonwealth v. Burno, 396 Mass. 622, 627 (1986). Prophete's abrasions, contusions, and impaired gait are serious enough to satisfy the injury prong. And, while the jury certainly could have inferred that the medical records show that the defendant did not run her over with the SUV, the evidence did not mandate such an inference.
2. Lack of a sua sponte self-defense instruction. The defendant did not request a self-defense instruction, and the judge did not give one sua sponte. The defendant now argues, citing our decision in Commonwealth v. Galvin, 56 Mass. App. Ct. 698, 701 (2002), that the judge's failure to do so created a substantial risk of a miscarriage of justice. In Galvin, we held that the judge was obligated to instruct sua sponte on self-defense "[b]ecause there was an evidentiary basis for a self-defense instruction." Ibid. However, Galvin must be read against the backdrop of our decision in Commonwealth v. Hakkila, 42 Mass. App. Ct. 129, 130-131 (1997), which was discussed in Commonwealth v. Norris, 462 Mass. 131, 143-144 & n.12 (2012), that this obligation arises only when the defendant relies on a self-defense theory at trial.
The defendant did allude to self-defense with respect to the struggle over the keys, but the verdict slips show that he was not convicted for this conduct. Instead, the assault and battery conviction was for pushing Prophete out of the SUV. The defendant testified that Prophete fell out of the car on her own, and defense counsel reiterated these points in closing. And the record did not support a self-defense instruction for the ABDW charge, nor did the defendant rely on such a theory. Thus, the defendant did not rely on a self-defense theory with respect to the conduct for which he was convicted, and the judge's failure to give a sua sponte self-defense instruction did not result in a substantial risk of a miscarriage of justice.
3. Exclusion of questions regarding prior dismissal of the case. The defense theory of the case was that Prophete was lying about the incident to gain an advantage in the divorce proceedings and obtain sole custody of the child. Defense counsel was allowed to ask Prophete whether she had filed for divorce based on cruel and abusive treatment related to the incident, and whether she thought that the criminal proceedings against the defendant would help her in her divorce action, but not about why she had the case dismissed and then refiled. The defendant argues that this decision violated his constitutional right to cross-examine a witness on her potential bias or prejudice. See Commonwealth v. Kindell, 84 Mass. App. Ct. 183, 186 (2013).
Defense counsel's only proffered reasons for asking about the dismissed case were that he "would ... have questions about if the divorce was still pending on the date when it was dismissed and the date she refiled it," and that "her success in her divorce case could depend on what happens here." With respect to the former, the divorce documents show that Prophete filed her divorce action about one year before invoking her privileges, and she testified that the divorce was still pending. If defense counsel had hoped to demonstrate that Prophete had the case refiled only after deciding to divorce the defendant, he would have failed. With respect to the latter, the judge's decision to exclude testimony about the dismissal and refiling of the case did not prevent defense counsel from asking, as he did, whether Prophete would use the criminal proceedings in her divorce action. The defendant's right to cross-examine Prophete on her bias and prejudice was not violated.
4. The prosecutor's failure timely to disclose exculpatory evidence. Under Brady v. Maryland, 373 U.S. 83 (1963), the prosecution team has a duty timely to disclose exculpatory evidence in its possession to the defense. See Commonwealth v. Wilson, 381 Mass. 90, 114 (1980). The prosecution team includes victim-witness advocates. See Commonwealth v. Bing Sial Liang, 434 Mass. 131, 135-136 (2001). Good faith on the part of the prosecution team does not excuse failure to disclose exculpatory evidence. See Brady, 373 U.S. at 87.
The defendant bears the burden of proving that the nondisclosure of exculpatory evidence was prejudicial. Where, as here, the defendant specifically requested the undisclosed evidence, "a standard of prejudice more favorable to the defendant is justified," and "a defendant need only demonstrate that a substantial basis exists for claiming prejudice from the nondisclosure." Commonwealth v. Tucceri, 412 Mass. 401, 407, 412 (1992). We will uphold a conviction only if "we can be confident that, even if the prosecution had supplied the [evidence] to the defendant[ ] in timely fashion, the [evidence] would not have influenced the jury." Commonwealth v. Daye, 411 Mass. 719, 729 (1992).
Here, the defendant argues that the photos were exculpatory, and their nondisclosure prejudicial, because the fact that they appeared to depict all of Prophete's injuries, but did not include one focused on her right leg, corroborates his testimony that he did not run over her leg with the SUV and impeaches Prophete's credibility. In addition, the right leg is somewhat visible in a photo that focuses on the left arm, and does not appear injured. The Commonwealth argues, and the motion judge ruled, that the photos are merely cumulative of the medical records, and that their nondisclosure was neither exculpatory nor prejudicial.
The photos are not cumulative of the medical records, and are exculpatory of the ABDW conviction. The medical records are replete with technical terminology, some of which the Commonwealth felt it necessary to define in its brief. Seeing no swelling in a leg allegedly run over by an SUV is more powerful than reading that "there is really no significant edema." Moreover, the defendant could have used the photos to ask the jury to question why, if Prophete's right leg had been run over by an SUV, a set of photos of her injuries did not include one focusing on her right leg. Thus, the defendant has met his burden to show that the photos were exculpatory of his ABDW conviction and that he was prejudiced by their nondisclosure. However, the photos do not rebut any of Prophete's claims related to the assault and battery conviction, and are sufficiently attenuated from her credibility with respect to that claim, that the defendant has failed to demonstrate prejudice with respect to it.
The Commonwealth also argues that, as the motion judge found, the prosecution team never had a duty to disclose the photos because they were not in its custody or control until after the close of the evidence. This is incorrect. The e-mail chain demonstrates that the victim-witness advocate possessed the photos by 8:30 A.M. on the second day of trial. Since victim-witness advocates are part of the prosecution team, see Bing Sial Liang, 434 Mass. at 135-136, the duty to disclose the photos arose at that point at the latest. Finally, the prosecutor states in his affidavit, which the motion judge credited, that the victim-witness advocate told him in person, before the start of the second day of trial, that the cousin had the photos, but that he did not understand this to mean that the victim-witness advocate also had them. Even so, a good faith communications breakdown within the prosecution team does not excuse a Brady violation. "If the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor." United States v. Agurs, 427 U.S. 97, 110 (1976).
Conclusion. The portion of the order denying the motion for new trial on the conviction of ABDW is reversed; in all remaining respects, the order is affirmed.
The judgment on the lesser included offense of assault and battery is affirmed. On the count charging ABDW, the judgment is vacated and the verdict is set aside.
So ordered.

While it is conceivable that striking Prophete's head against the steering wheel also could have supported the ABDW conviction, the verdict slips, the prosecutor's closing argument, and the judge's instructions indicate that this was advanced as a theory of assault and battery on a pregnant person and the lesser included offense of assault and battery, not ABDW. Any other injury caused by the defendant moving the vehicle with Prophete hanging out an open door might also have supported an ABDW conviction, but the Commonwealth's sole theory of the ABDW case advanced to the jury was that the defendant ran over Prophete's leg.