## COMMONWEALTH *vs.* RONALD J. FRANCHINO.

No. 02-P-1615.

Barnstable. December 1, 2003. - June 25, 2004.

Present: BECK, BROWN, & CYPHER, JJ.

*Assault with Intent to Maim. Assault and Battery. Self-Defense. Practice, Criminal,* Instructions to jury.

Where defense counsel at the trial for indictments charging attempted murder, assault with intent to maim, and assault and battery made three objections to the judge's charge regarding self-defense, and the judge attempted to respond to defense counsel's requests and provided an additional charge in response to each request, defense counsel did not exhaust all realistic opportunity for redress, and his silence amounted to acquiescence in the final charge, thus waiving the right of full substantive review of the defendant's claim that the self-defense instruction with respect to the assault with intent to maim count was inadequate. [371-372]

The judge's charge at the trial of indictments for assault with intent to maim and assault and battery was patently inadequate, as no reasonable juror would have been likely to understand either the legal requirements of self-defense or that the defense might altogether negate the defendant's legal responsibility for the crimes charged, and the errors in her charge created a substantial risk of a miscarriage of justice requiring reversal of the defendant's convictions. [372-377]

INDICTMENTS found and returned in the Superior Court Department on June 5, 2001.

The cases were tried before *Regina L. Quinlan,* J.

*Jens A. Bahrawy* for the defendant.

*J. Thomas Kirkman,* Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant was convicted by a Superior Court jury of assault with intent to maim, G. L. c. 265, § 15, and assault and battery, G. L. c. 265, § 13A. He was found not guilty on a charge of attempted murder. On appeal, he argues that (1) the trial judge's instructions with respect to self-defense were

fatally defective; (2) the judge failed to instruct properly with respect to the scienter requirement of G. L. c. 265, § 15; and (3) the evidence supporting the conviction of the latter offense was legally insufficient. We reverse on the basis of the defendant's first argument.

*Facts.* The victim was the defendant's live-in girl friend. At some point in the relationship the defendant began to suspect that the victim had become romantically involved with another man. This became a source of tension and conflict in the couple's relationship.

On the evening of December 23, 2000, the defendant became despondent over the state of his relationship with the victim. After telling him she was moving out of the residence, she had gone out that day, ostensibly Christmas shopping, but the defendant suspected a secret liaison with a paramour. Feeling depressed, the defendant invited his teen-aged daughter (who lived with her mother, the defendant's ex-wife) to spend the evening with him. Father and daughter went out for dinner, then repaired to the defendant's home to await the victim's return.

The victim did not come home until approximately 3:00 A.M. the following morning. A physical altercation immediately ensued during which the victim's lip was badly injured, apparently a result of a bite wound inflicted by the defendant. The defendant's daughter did not witness the confrontation, but testified that she could hear the victim and defendant fighting from her bedroom and it sounded to her as though the defendant was the aggressor.

Eventually, the defendant's daughter became fearful and called for her mother to pick her up. The defendant's ex-wife appeared shortly thereafter, and the defendant's daughter immediately got into her mother's car. The victim, after a brief scuffle with the defendant, got into the car as well. The three women drove directly to a police station, where the victim filed a criminal complaint.

Other relevant facts are included in our analysis as necessary.

*Discussion.* In a case like this where nondeadly force is used, a defendant is entitled to an instruction on self-defense "if any view of the evidence would support a reasonable doubt as to whether the prerequisites of self-defense were present," *Com-*

*monwealth* v. *Pike*, 428 Mass. 393, 395 (1998), to wit: (1) the defendant had "a reasonable concern over his personal safety," *Commonwealth* v. *Baseler*, 419 Mass. 500, 502-503 (1995); (2) he used all reasonable means to avoid physical combat; and (3) the degree of force used was reasonable in the circumstances, with proportionality being the touchstone for assessing reasonableness. *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980). See *Commonwealth* v. *Baseler*, 419 Mass. at 502-503 & n.2; *Commonwealth* v. *Galvin*, 56 Mass. App. Ct. 698, 701 (2002). In deciding whether the evidence supports an inference that these predicate components are present in a particular case, the facts are viewed in the light most favorable to the defendant, no matter how incredible his testimony. See *Commonwealth* v. *Pike*, 428 Mass. at 395.

Here, the defendant testified that the principal melee occurred after he was attacked by the victim. Specifically, the defendant described how he was set upon by the victim as he descended a flight of stairs, and he testified that the victim's injuries, including the bite on the lip that gave rise to the assault with intent to maim count, were the result of his efforts to defend himself from injury. Under the standards set out above, this was sufficient to warrant a self-defense instruction as to all of the charges here, notwithstanding the fact that the defendant's testimony was gainsaid by other witnesses. The trial judge appears to have reached the same conclusion, and the Commonwealth, on appeal, does not dispute the necessity of a self-defense instruction. Rather, the dispute here centers on the adequacy of the judge's charge.

During her charge on the elements of attempted murder (the defendant was acquitted of that count), the judge stated:

> "You may consider whether or not the defendant's mental condition at the time *affected his ability to arrive at a specific intent to kill. . . .* Another factor that you may consider as one of the facts and circumstances in the case is whether or not there was some justification or mitigation. . . . Now, justification, an example of that — if a person uses a reasonable amount of force to defend themselves from another, then the law may recognize that as a form of justification. If a defendant uses an amount of

force to protect himself from another which is excessive under the circumstances, but was justified at least to some extent, then that may be mitigation. *If you find there is evidence of mitigation, then you may consider that in determining whether or not there has been specific intent to commit the crime of murder, which is not justified,* the killing of another. The Commonwealth has the burden of proving that it was not justified; that it was not excused; that it was not mitigated. But those are factors that you may consider *on that issue*." (Emphases supplied.)

The judge made no further mention of self-defense in connection with any of the other counts during her main charge. Defense counsel promptly objected, requesting a self-defense instruction with respect to the assault with intent to maim count (but curiously not with respect to the assault and battery charge). The judge thereupon charged the jury further:

"I did mention at the beginning that there is an overlap in these charges *between concepts such as specific intent, justification, and excuse.* So, to the extent that I have talked in each of the offenses charged about whether there is justification or excuse *when I talked to you about specific intent or attempted murder* would also apply to the other offenses as well as the Commonwealth's burden to prove lack of justification, lack of excuse, a lack of mitigation."

That was the final instruction that mentioned anything even remotely related to the concept of self-defense before deliberations began.

Still dissatisfied with the judge's charge, defense counsel urged the judge to instruct the jury further on "justification, lack of justification . . . the issue of self-defense" in connection with the assault with intent to maim charge. The judge indicated that she would oblige. Approximately one hour into deliberations, the jury had sent a question to the judge. After recalling the jury to answer the question, the judge attempted to charge further on the topic of self-defense, apparently in response to defense counsel's objection:

"Now yesterday I told you that the Commonwealth has

the burden of proving a lack of justification or excuse beyond a reasonable doubt. And you can recall that those instructions are still valid as of today."

The defendant objected yet again "to the failure to give the self-defense instruction as it relates to . . . the assault with intent to maim." The judge then gave a final supplemental charge:

"Unless it wasn't clear that I did mention this morning about the Commonwealth must prove lack of excuse or justification, and I talked about that yesterday — that applies to all three charges and not just to one or the other."

Defense counsel made no further objection as to that issue. With that, the jury resumed deliberations.

On appeal, the defendant argues that he was entitled to an instruction on self-defense and that it was not sufficient that the judge "informed the jury that the Commonwealth had the burden to show that the defendant did not act under any right or excuse when touching the victim." While not as clear as it might be, we take this to mean that the defendant now asserts that a self-defense instruction was required as to all counts, despite the fact that trial counsel objected only to the omission of an instruction with respect to the assault with intent to maim count. This represents a change of tack. Consistent with the principles set out in *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967), an issue raised for the first time on appeal is subject to review, if at all, only for the purpose of assessing whether the putative misstep was error, and if so, whether it created a "substantial risk of a miscarriage of justice." In considering the adequacy of the self-defense instruction with respect to the assault and battery count, therefore, we apply the *Freeman* standard.

As for the charge of assault with intent to maim, the question of the standard of review is less straightforward. Ordinarily, "[t]he failure to renew an objection to a charge after a trial judge has given further instructions in response to an objection, and after apparent acquiescence in the amended charge," constitutes a waiver of a claim of error with respect to the amended instructions (and so limits review to application of

*Freeman* principles). *Commonwealth* v. *Sousa*, 33 Mass. App. Ct. 433, 436 (1992). At some point, however, defense counsel may be forgiven for failing to persist with a point when it is plain such efforts will be futile.

In this case, defense counsel made three objections and had little to show for his trouble. At the same time, it is plain that the judge was attempting to respond to defense counsel's requests and showed no impatience with the multiple objections; indeed, the judge provided an additional charge in response to each request. In these circumstances, we conclude that defense counsel had not exhausted all realistic opportunity for redress, and hold that by remaining silent, he acquiesced in the final charge, and so waived the right of full substantive review. Thus, as with the assault and battery count, we assess any inadequacy in the self-defense instruction with respect to the assault with intent to maim count only for the purpose of determining whether a substantial risk of a miscarriage of justice is posed.

Before turning to the substance of the defendant's claims, we are obliged to say yet again that pattern instructions are available and provide a ready means of ensuring that juries are properly charged. Reversals resulting from defective jury instructions are common, and trial judges would do well to consult such standard forms of instructions to avoid injecting unnecessary error into otherwise well-managed trials. See and compare *Commonwealth* v. *Caramanica*, 49 Mass. App. Ct. 376, 378 & n.2, 382 (2000). Further, prosecutors must not stand idly by in situations such as these; they are obliged to come to the aid of the judge in an effort to make the instructions better, and thereby perhaps avoid the need for a new trial. Cf. *id.* at 382.

Now to the law: The basic flaw in the judge's instructions on self-defense lay in her failure to explain the fundamental nature of an affirmative defense, i.e., that it negates criminal responsibility even where the Commonwealth has otherwise met its evidentiary burden with respect to all elements of the crime charged. Stated differently, the judge never informed the jury in any clear or straightforward way that if the Commonwealth failed to prove that the defendant had not acted in

self-defense, he must be acquitted. We also note that the judge likewise completely omitted any reference whatsoever to the legal requirements for establishing self defense, namely, (1) the evidence at least raised a reasonable doubt as to a "reasonable concern over . . . personal safety," *Commonwealth* v. *Baseler,* 419 Mass. at 502-503; (2) the necessity for retreat; and (3) the limitation that only sufficient and proportional defensive force be used. With no standard for assessing whether the defendant had acted in lawful self-defense and with no clear instruction on what outcome was required if the defendant had acted in self-defense, the jury were unlikely to apply the law correctly.

In addition to these fundamental errors, the judge also created confusion by misstating the nature of the interplay between the concept of self-defense and the mental state required for conviction of the crimes charged here. As noted, the defendant was charged, inter alia, with attempted murder. Although he was acquitted on that charge, the errors in the instructions on attempted murder also may well have confused the jurors in relation to the crimes of which he was convicted, assault with intent to maim and assault and battery, because they were instructed that the concepts of specific intent, justification, excuse, and mitigation applied to all charges. The scienter elements of attempted murder (at least under the theory presented to the jury here[1]) are identical to those of assault with intent to murder: The Commonwealth must prove that a defendant (1) harbored a specific intent to kill and (2) acted with malice. See *Commonwealth* v. *Boateng,* 438 Mass. 498, 517 (2003). Unlike the definition of malice in the crime of murder, malice in the context of attempted murder "means merely 'absence of justification, excuse, or mitigation.' " *Commonwealth* v. *Nardone,* 406 Mass. 123, 130 (1989), quoting from *Commonwealth*

[1]General Laws c. 265, § 16, provides that attempt to commit murder may be proved not only by an attempt by poisoning, drowning, or strangling but also "by any means not constituting an assault with intent to commit murder." This alternate basis for attempted murder, not at issue here, is designed to bring within the purview of § 16 attempts that do not contain any assault element. Although we need not decide the question, it appears that, in any event, the scienter element is identical for this alternate statutory theory of attempted murder.

v. *Henson*, 394 Mass. 584, 591 (1985). *Commonwealth* v. *Boateng, supra.* "Justification" and "excuse" are interchangeable terms in that they refer to situations in which an otherwise unlawful act is rendered lawful — as when a defendant acts in self-defense. See *Commonwealth* v. *Boateng*, 438 Mass. at 517. Mitigation, however, embodies a broader category of factors that, while not providing a basis for acquittal, may justify conviction of a lesser-included offense by negating the element of malice. See *ibid.* See also *Commonwealth* v. *Nardone*, 406 Mass. at 130-131 (where excessive force is used in otherwise lawful self-defense, malice is negated and crime is reduced to lesser-included offense: thus malice means the absence of mitigation).

The judge here improperly suggested to the jury that the issue of self-defense was relevant to the question of the defendant's *specific intent* — rather than confining her discussion, as she should have, to how self-defense is relevant to the *separate*, or *independent*, element of *malice*. See *Commonwealth* v. *Murray*, 51 Mass. App. Ct. 57, 61 (2001) (malice and specific intent to kill are separate elements of attempted murder). See also *Commonwealth* v. *Henson*, 394 Mass. at 591. As noted already, the concept of an affirmative defense is premised on the notion that, absent the excuse, the defendant would be guilty of the crime charged. Here, the judge blurred these concepts by repeatedly stating that evidence of self-defense was relevant to the question of specific intent. In fact — and this is a crucial point — the judge arguably informed the jury that self-defense was relevant *only* to the question of the defendant's *specific* intent. This raises several concerns.

If the jury understood that self-defense ran only to the question of specific intent, they might have deemed the defense inapplicable to the charge of assault and battery, which the judge emphasized did not require proof of specific intent. Further, if the jury were misled into thinking that the self-defense evidence was relevant only to the question of specific intent, they might have assumed that self-defense did not provide a basis for acquitting the defendant of even a charge that required proof of specific intent — as the assault with intent to maim count here — if there were otherwise strong

evidence of a specific intent on the defendant's part. Stated differently, it was crucial for the jury to understand that regardless of whether the defendant had intended to inflict injury on the victim, if he acted in lawful self-defense (without using excessive force), he must be acquitted. See *Commonwealth* v. *Mejia*, 407 Mass. 493, 496 (1990) ("[i]t is enough for acquittal that there be a reasonable doubt whether the defendant acted in proper self-defense"). Cf. *Commonwealth* v. *Johnson*, 412 Mass. 368, 370-373 (1992) (defendant deprived of fair trial because jury not properly instructed that use of reasonable force in defense of another constituted justification requiring acquittal and that defense of another with excessive force mitigated crime of murder to lesser included offense of manslaughter). This the judge failed to convey.

In effect, what happened in this case is that the judge gave little more than the standard instruction on malice appropriate to a case where attempted murder is charged, including an (inaccurate) explanation of how malice may be negated, and then relied on the oblique references to "justification and excuse" contained in that instruction as a substitute for a proper self-defense instruction on the attempted murder charge and the charges of assault with intent to maim and assault and battery. This was by no means adequate. Indeed, the judge never even plainly stated that "justification" and "excuse" were synonymous with self-defense; rather, she, at one point, defined justification solely in terms of the defense of necessity, see *Commonwealth* v. *Hood*, 389 Mass. 581, 590-591 (1983), a concept not even implicated by the facts here. The fact that the judge's instructions improperly conflated already vexed legal concepts like specific intent and malice only made matters worse.

In view of all these circumstances, we conclude that the judge's charge was patently inadequate; that is to say, no reasonable juror would have been likely to understand either the legal requirements for self-defense or that the defense might altogether negate the defendant's legal responsibility vis-à-vis all the crimes charged. In short, the judge's charge was infected with fatal error. It remains to consider only whether the error posed the requisite substantial risk of a miscarriage of justice to mandate reversal.

The question of self-defense was squarely raised in this case. The defendant testified that the incident in which the victim was injured occurred after the victim attacked him. The victim admitted in her testimony that she pushed the defendant and might have punched or scratched him during the incident.[2] As noted, the only testimony concerning the dispute came from the victim, the defendant, and the daughter of the defendant. We note also that the defendant was acquitted of attempted murder, the charge to which the jury were most likely to apply the principles of self-defense based on the judge's problematic instructions. Finally, and perhaps most important, however, is that a claim of self-defense was at the core of the defendant's theory of the case on all the charges; by misstating the law, the trial judge deprived the defendant of his main defense. In view of these considerations, and after a careful review of the record, we conclude that the errors here created a substantial risk of a miscarriage of justice, requiring that the defendant's convictions be reversed. See *Commonwealth* v. *Lapage*, 435 Mass. 480, 487-488 (2001) (substantial risk of a miscarriage of justice posed where omitted or inaccurate instructions deprive the defendant of his principal line of defense).

This result is consistent with other cases in which similar errors in self-defense instructions were deemed to pose a substantial risk of a miscarriage of justice. See, e.g., *Commonwealth* v. *Carlino*, 429 Mass. 692, 694 (1999), where a retrial was ordered on the basis of the trial judge's failure, inter alia, to instruct the jury that "self-defense . . . , if warranted by the circumstances and carried out properly, constitute[s] a complete defense and not merely a mitigating circumstance." See also *Commonwealth* v. *Noble*, 429 Mass. 44, 47 (1999) (retrial ordered applying the *Freeman* standard). Here, as in those prior decisions, we simply "have no indication as to the rationale or process behind the jury's decision[; in such circumstances,] it would be inappropriate to speculate that they were not influenced by th[e] flawed instruction[s]." *Commonwealth* v. *McLaughlin*, 433 Mass. 558, 563-564 (2001) (error in self-defense instructions deemed to create substantial risk

---

[2]Her testimony, however, was that she tried to push the defendant off after he attacked her.

of a miscarriage of justice). See *Commonwealth* v. *Roderick*, 429 Mass. 271, 278 (1999); *Commonwealth* v. *Galvin*, 56 Mass. App. Ct. 698 (2002).

*Conclusion.* In view of our disposition of the defendant's first claim, it is not necessary to take up the other issues raised by him in any detail. We assume at any retrial the jury charge will accurately track the statutory elements of the offenses charged.[3] Further, we observe that, as to the question of the sufficiency of the evidence, the defendant apparently has relied in his brief on the statutory elements of mayhem, G. L. c. 265, § 14; the defendant, however, as noted, was charged under G. L. c.265, § 15 (assault with intent to maim or disfigure). No evidence of any actual "cut[], slit[] or mutilat[ion] . . . [of] the lip" (G. L. c. 265, § 14) is required under § 15.

*Judgments reversed.*

*Verdicts set aside.*

---

[3]We note that the judge here, despite protests from the prosecutor, also initially gave an incorrect instruction on the elements of assault with intent to maim. The error was corrected by a forceful and accurate charge the next day.