COMMONWEALTH vs. CHRISTOPHER ROBERT KING.

No. 09-P-318.

Suffolk. December 14, 2009. - July 6, 2010.

Present: CYPHER, DREBEN, & MEADE, JJ.

Further appellate review granted, 458 Mass. 1102 (2010).

*Assault and Battery. Self-Defense. Evidence,* Self-defense. *Practice, Criminal,* Instructions to jury, Argument by prosecutor, Assistance of counsel.

At the trial of a criminal complaint charging the defendant with assault and battery, the judge's instructions to the jury on self-defense did not create a substantial risk of a miscarriage of justice, where the instructions, which did not include two of the three requirements generally contained in self-defense instructions (i.e., whether the defendant had reasonable concern for his safety, and whether the defendant could have reasonably retreated), prejudiced the Commonwealth by depriving it of two separate means to defeat the defendant's claim of self-defense and gave the defendant a benefit to which he was not entitled; and where the error did not materially influence the verdict, given that the judge did instruct the jury on the proper criteria for assessing whether the amount of force used by the defendant in response to the alleged attack by the victim was appropriate, and therefore whether the defendant had used lawful self-defense. [197-202] DREBEN, J., dissenting.

A criminal defendant charged with assault and battery failed to demonstrate that certain statements in the prosecutor's closing argument at trial distorted a defense witness's testimony or cast the defendant as the first aggressor. [202-203]

COMPLAINT received and sworn to in the Central Division of the Boston Municipal Court Department on November 29, 2006.

The case was tried before *Robert J. McKenna,* J.

*Kathryn Karczewska Ohren* for the defendant.

*Elisabeth Kosterlitz,* Assistant District Attorney, for the Commonwealth.

MEADE, J. After a jury trial, the defendant was convicted of assault and battery in violation of G. L. c. 265, § 13A, and was sentenced to one year of supervised probation. On appeal he claims that the judge's jury instruction on self-defense, and the

prosecutor's closing argument, created a substantial risk of a miscarriage of justice. The defendant also claims that trial counsel was ineffective for not objecting to the prosecutor's closing argument. We affirm.

1. *Background.* a. *The Commonwealth's case.* On the evening of October 23, 2006, Christopher Garden, the victim, had been bowling at King's, a bar and restaurant in Boston, where he worked. The victim was a member of King's bowling team, which bowled on Monday nights. After bowling, the victim went into the lounge area of the restaurant, where he saw the defendant "making his girlfriend pay for his drinks." He told the defendant, whom he did not know, "Don't make your bitch pay for your drinks." Words were exchanged between the two, and the victim "removed" himself from "the situation." The victim did not threaten the defendant in any way, and instead walked away from the altercation so as not to jeopardize his job at King's.

On the following Monday night, October 30, 2006, the victim was again bowling at King's. At approximately 1:50 A.M., he left the bowling area and walked into the lounge area, which was dimly lit. There, the defendant, without first speaking to or interacting with the victim, punched the left side of the victim's face with his right fist. The next thing the victim remembered was waking up in an ambulance. The victim was brought to the hospital where he was treated for several injuries, including fractures to his eye socket and face that required surgery.

Crecia Taboh, a hostess at King's, was also bowling on the night of the crime. At the time of the assault, a girl's scream drew Taboh's attention to the lounge area, where she saw the victim "kneeled down, [with] his chest to his knee." The defendant was standing a few tables away from the victim, and he was being held back by some of his friends. Taboh could see the victim had blood on the left side of his face, over his eyes, and on his forehead. There was also broken glass on the floor around him. Taboh left and called the police. When Taboh returned to the lounge area, she noticed that, while there were no tables overturned, there was a pint glass on the floor, the top part of which was shattered and lay in pieces around the victim along with blood.

When the police arrived, Boston police Sergeant John Doris spoke with the defendant, who claimed that he had been "attacked by the victim and several of his friends" but did not specify that he had been punched by the victim or anyone else. The defendant admitted that he had punched the victim, and stated a couple times that he was "very sorry." Doris also spoke with the victim, who did not remember what had happened.

b. *The defense.* The defendant and two of his friends testified to a different sequence of events. One friend, Sean Griffin, who was also bowling on October 30, noticed the victim and the defendant exchanging looks. Around 1:30 A.M., the defendant and Griffin went into the lounge area. As they walked into the lounge, the victim was standing in front of the doorway to the lounge. The defendant stood in front of Griffin in the doorway; the defendant was "blocked in."[1] After a heated exchange between the victim and the defendant, the victim turned, put down the glass he was holding, and came at the defendant with a clenched fist. A fight ensued.

The defendant agreed with the victim's testimony as to what had transpired at their first meeting on October 23, but added that the victim had also invited the defendant to fight outside, and that he declined the invitation. On the night of the crime, the defendant went into the lounge area and the victim stood four feet away from him at the doorway. Words were exchanged between the two, the victim put his glass down and punched the defendant. The defendant returned the punch, the victim stumbled on the table, then fell and hit his head hard on the floor. The defendant denied that he hit the victim with a glass, and he did not understand why the eventual police report did not contain his claim that the victim punched him first. The defendant was then kept at the scene by the King's manager and employees. When the police arrived, the defendant told the police he had been attacked by the victim[2] and that he was sorry.

2. *Discussion.* a. *Standard of review.* The defendant claims

---

[1]The doorway to the lounge was a double door, with one door shut, but there was no evidence that it was locked.

[2]The police report stated that the defendant claimed he had been attacked by the victim and the victim's friends, but at trial the defendant denied making that claim.

that because he requested the model jury instruction on self-defense, and the judge denied the request, the claimed error is preserved for appellate review. In general, this is correct. See *Commonwealth* v. *White*, 452 Mass. 133, 138 (2008). Here, however, the record does not show that counsel submitted instructions; they were not filed with the clerk of the court and docketed, nor were they provided to the prosecutor. Although the transcript reflects that counsel informed the court at the beginning of the trial that he would be requesting a self-defense instruction, he did not state that he would be submitting proposed jury instructions.[3] At the close of the instructions given at trial, the trial judge asked if defense counsel was satisfied, and he answered, "Yes, thank you." In this circumstance, we conclude the claim is not preserved, and review only to determine if a substantial risk of a miscarriage of justice was created. Compare *Commonwealth* v. *Smith*, 449 Mass. 12, 17 (2007) (concluding defendant failed to preserve claimed error in jury instructions where trial transcript indicated counsel submitted written requests for instructions, but requests were not filed with court clerk and docketed, and not discussed with detail at charge conference).

b. *Self-defense instruction.* There is no dispute that in the light most favorable to the defendant, credibility issues aside, the defendant was entitled to a nondeadly force self-defense instruction. See *Commonwealth* v. *Pike*, 428 Mass. 393, 395 (1998). This is because, based on any view of the circumstances, there was evidence warranting at least a reasonable doubt that the defendant (1) had "a reasonable concern over his personal safety," *Commonwealth* v. *Baseler*, 419 Mass. 500, 502-503 (1995); (2) "used all reasonable means to avoid physical combat," *Commonwealth* v. *Franchino*, 61 Mass. App. Ct. 367, 369 (2004); and (3) "used no more force than was reasonably necessary in all the circumstances of the case." *Commonwealth*

---

[3]In support of a motion to reconstruct the record, the defendant's trial counsel submitted an affidavit that claimed he had filed a proposed jury instruction on self-defense, and the judge denied the request over his objection. The judge held a hearing in an attempt to reconstruct whether that was the case. After the hearing, the judge ruled that he had no independent memory on the issue. While the judge was inclined to take trial counsel at his word, he ultimately did not accept the affidavit because he thought counsel could have been mistaken.

v. *Harrington*, 379 Mass. 446, 450 (1980).[4] Thus, in order for the defendant to be found guilty, the Commonwealth had the burden of proving beyond a reasonable doubt that any one of these factors did not exist. See *Commonwealth* v. *Santos*, 454 Mass. 770, 780-781 (2009).

On self-defense, the judge gave the following instruction:

> "Evidence in this case has been offered that the defendant acted in self-defense. In sum, a person may lawfully use reasonable force to defend himself from physical attack. Once evidence of self-defense is presented, the Commonwealth must prove beyond a reasonable doubt that the defendant did not act in self-defense. In other words, if you have a reasonable doubt whether the defendant acted in self-defense, your verdict must be not guilty. A person may use no more force than is reasonably necessary in all of these circumstances to defend himself or herself. Unreasonable or excessive force is force that is manifestly disproportionate under all of these circumstances. The question as to how far a defendant could go in defending himself or herself is for you, the jury, to decide.

> "You may give new [*sic*] regard to the infirmity of human impulses and passions. In considering the reasonableness of the defendant's conduct, you may consider evidence of the relative physical capabilities of the individual involved in the incident. You may also consider how many persons were involved in each side. You may also consider the availability of room to maneuver or the means of escape from the area in question. The Commonwealth must prove beyond a reasonable doubt that the defendant acted with excessive force. Bear in mind the defendant does not have to prove anything. If there is evidence that he may have acted in self-defense, then the Commonwealth must prove beyond a reasonable doubt that the defendant did not act in self-defense. If you determine that the Commonwealth has failed to prove beyond a reasonable doubt that the

---

[4] In the light most favorable to the defendant, there was evidence that the defendant punched the victim only after the victim had first punched the defendant, and that the defendant was "blocked in" by the victim, the walls, the doorway to the lounge, and his friend, and thus had no avenue of escape before resorting to force.

defendant did not act in self-defense, you must find the defendant not guilty. In other words, if you have a reasonable doubt about whether or not the defendant acted in self-defense, your verdict must be not guilty."

Thus, the charge did not include two of the three requirements generally contained in self-defense instructions: whether the defendant had reasonable concern for his safety, and whether he could have reasonably retreated, that is, whether he had availed himself of all proper means to avoid physical combat before resorting to the use of force. The judge only focused on the third requirement, namely, that the defendant used no more force than was reasonably necessary in all the circumstances.

To determine whether the judge's instruction created a substantial risk of a miscarriage of justice, and keeping in mind that "[e]rrors of this magnitude are extraordinary events and relief is seldom granted," *Commonwealth* v. *Randolph*, 438 Mass. 290, 297 (2002), we ask four questions. They are: "(1) Was there error? (2) Was the defendant prejudiced by the error? (3) Considering the error in the context of the entire trial, would it be reasonable to conclude that the error materially influenced the verdict? (4) May we infer from the record that counsel's failure to object or raise a claim of error at an earlier date was not a reasonable tactical decision?" *Id.* at 298 (citations omitted). Only if the answer to all four questions is "yes," may we find that there exists a substantial risk that justice miscarried. *Ibid.* See *Commonwealth* v. *Russell*, 439 Mass. 340, 345 (2003).

Here, only one of these questions may be answered in the affirmative. Yes, there was error. "The jury must receive complete instructions from the trial judge, including an explanation of the proper factors to be considered in determining the issue of self-defense." *Commonwealth* v. *Shaffer*, 367 Mass. 508, 512 (1975). Because the judge omitted two of the three requirements, the self-defense instruction was not complete.

Although there was error, it did not prejudice the defendant. Once self-defense is properly raised either through the Commonwealth's case-in-chief or by the defendant's case, the burden then becomes the Commonwealth's to prove beyond a reasonable doubt that one of the three requirements of self-defense

was missing. See *Commonwealth* v. *A Juvenile (No. 1)*, 396 Mass. 108, 113 (1985); *Commonwealth* v. *Glacken*, 451 Mass. 163, 167 (2008).

Thus, the Commonwealth could meet its burden by showing, beyond a reasonable doubt, any one of the following: (1) the defendant did not have a reasonable concern for his personal safety; or (2) the defendant had not availed himself of all proper means to avoid physical combat before resorting to the use of force; or (3) the defendant used more force than was reasonably necessary in all the circumstances of the case. See *Commonwealth* v. *Tirado*, 65 Mass. App. 571, 575-576 & n.2 (2006). Proving any one of the three would establish that the defendant did not act in self-defense.

Here, the judge's error deprived the Commonwealth of two separate means to defeat self-defense, and left the Commonwealth with the single opportunity of proving that the defendant used more force than was reasonable. This instruction prejudiced the Commonwealth, not the defendant.[5] The effect of the error was that the first two requirements of self-defense were established for the defendant and not open to contrary proof. Far from harming the defendant, this actually made the Commonwealth's burden of proof more difficult. If the Commonwealth had not proved beyond a reasonable doubt that the defendant used unreasonable force in the circumstances, the jury's only option would have been to acquit the defendant.

We also determine, considering the error in the context of the entire trial, that the error did not materially influence the verdict in a manner harmful to the defendant. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). The defendant's theory of the case was that the victim struck first and the defendant acted in self-defense. In his closing argument, the defendant primarily stressed what he urged to be inconsistencies in the victim's accounts of the incident. He argued that the prosecution was relying on the victim to carry its burden to disprove self-defense, and that because the victim's testimony was not credible, the jury were required to acquit the defendant.

___

[5]In light of this, we can infer from the record that counsel's choice to not object to the omissions was tactical. See *Commonwealth* v. *Randolph*, 438 Mass. at 298.

The defendant did not argue that his fear of the victim justified the force he used, that the victim's injuries were accidently inflicted, or that the Commonwealth had failed to prove that the force he used was excessive.[6] Rather, he merely maintained that "if [a] person reasonably uses self-defense in the face of imminent danger, a physical threat, . . . that's a defense to assault and battery." Although imperfect, the judge did instruct the jury on the proper criteria for assessing whether the amount of force used by the defendant in response to the alleged attack by the victim was proportionate,[7] and therefore whether the defendant used lawful self-defense. See *Commonwealth* v. *Kendrick*, 351 Mass. 203, 212 (1966).

Furthermore, by the removal of two of the self-defense requirements from the jury's consideration, the defendant received a benefit to which he was not entitled. If, for example, the trial judge had instructed on the requirement that the Commonwealth prove beyond a reasonable doubt that the defendant did not do everything reasonable in the circumstances to avoid physical combat before resorting to force, the jury may well have found on that ground that the defendant was not entitled to use self-defense. Although Griffin testified that he was "behind [the defendant] in the doorway," and that the defendant was "blocked in," the jury could have appreciated that Griffin, as the defendant's friend, was biased in his favor. If properly instructed, it would have been reasonable for the jury to conclude that, after having been punched by the victim, the defendant could have turned around and walked out the door where Griffin was standing, rather than returning the punch. After all, Griffin, as the defendant's friend, had no purpose in blocking the defendant's exit to facilitate the victim's purported attack. Thus, even though

[6]The dissent suggests that the extent of the victim's injuries may have been accidentally occasioned by his fall over the table, but no witness claimed they were the result of an accident and the defendant did not argue that they were.

[7]The majority does not dispute the dissent's claim that the defendant's reasonable apprehension is a factor in determining what force the defendant may use under all the circumstances. However, the judge did properly instruct on proportionality and its importance when assessing the reasonableness of the defendant's actions. See *Commonwealth* v. *Franchino*, 61 Mass. App. Ct. at 368-369. Although the judge did not instruct on the defendant's concern for his safety and the ability to retreat, factors the Commonwealth could then not disprove, the judge did not limit the circumstances that could be considered.

the error, which provided the defendant with two of the three requirements of self-defense, may have materially influenced the verdict, it was not to the defendant's detriment. As such, the error in the instruction did not create a substantial risk of a miscarriage of justice.

c. *The prosecutor's closing argument.* The defendant claims, for the first time on appeal, that the prosecutor's closing argument misstated the evidence and distorted key eyewitness testimony. Because the defendant lodged no objection to the argument, we review to determine if the argument was erroneous, and if so, whether that error created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Bonds*, 445 Mass. 821, 836 (2006); *Commonwealth* v. *Robinson*, 74 Mass. App. Ct. 752, 763 (2009). Specifically, the defendant claims that it was improper for the prosecutor to argue as follows:

> "[T]hink about the limitations of the witnesses that the defense has brought to the stand. You've got these eyewitnesses, right? But Mr. Griffin was standing behind the defendant. So [he] really couldn't see much and he didn't say that — we didn't hear him testify that he saw the victim actually hit the defendant. We only heard him testify that he saw the victim coming in for a swing, at which point the defendant clocked the victim before the defendant was ever hit. So we've got conflicting stories even from them."

The defendant claims that this argument distorted Griffin's testimony and cast the defendant as the first aggressor. We disagree.

Griffin did not testify that the victim landed the first punch. Rather, Griffin merely testified that "[the victim] set[] his glass down at the table behind him and then came at [the defendant] to punch him," and "[i]mmediately there was a fight. It was pretty much immediately over. I saw [the victim] fall back." Thus, while the defendant and his other eyewitness both testified that the victim punched first, Griffin did not. The prosecutor's statement that "[w]e only heard [Griffin] testify that he saw the victim coming in for a swing" did not misstate or distort the evidence. See *Commonwealth* v. *Johnson*, 429 Mass. 745, 750

(1999) ("the prosecutor is allowed to assist jurors in analyzing the evidence and suggesting what conclusions they should draw from the evidence"). There was no error. Finally, because there was no error in the prosecutor's closing argument, counsel was not ineffective for not objecting to it. *Commonwealth* v. *Kirwan*, 448 Mass. 304, 317 (2007). See *Commonwealth* v. *Velazquez*, 61 Mass. App. Ct. 667, 675 (2004), cert. denied, 546 U.S. 850 (2005) (counsel not ineffective for not pursuing an objection that would have been unsuccessful).

*Judgment affirmed.*

DREBEN, J. (dissenting). I respectfully dissent as I consider the judge's erroneous instructions created a substantial risk of a miscarriage of justice.

1. *Background.* The parties agree as to the following facts. A week before the incident leading to the defendant's conviction, the defendant and some of his coworkers entered the lounge at King's bowling alley and bar to pay their bar tab. When Christopher Garden, the victim, an employee of King's, saw that a woman who appeared to be the defendant's girlfriend was paying for her drinks, he interposed, saying: "Don't make your bitch pay for your drinks."

The stories differed as to what happened next. The victim claimed that although there were words exchanged, he just walked away and did not threaten the defendant. The defendant and one of his coworkers testified that after they told the victim to "get lost," the victim took off his jacket, challenged the defendant to a fight, and asked him to step outside. However, no fight ensued.

A week later the defendant and some of his coworkers again went to King's to bowl and wish a friend farewell. The only point on which the parties agree is that the victim and the defendant had each consumed four or five beers. According to the victim, he walked into the lounge and "a fist [came] at [him]" from the defendant. He told one of the police officers[1] that as a result of the punch, he fell on the floor, and that during the fall

---

[1]The police officer was a defense witness.

he fell on a glass, which may have caused the laceration to his forehead. The victim suffered severe injuries and had to have surgery to repair his eye socket and other facial fractures.

The defendant and two of his coworkers testified to a different sequence of events. When the defendant and his coworkers went to the lounge to pay their bills, the victim, whom they thought was a bouncer, was standing in front of the doorway to the lounge blocking their path. One of the defendant's coworkers was right behind the defendant so he was blocked in and could not move back.[2] After a heated exchange between the victim and the defendant, the victim turned, put a glass he was holding on a table, and came at the defendant with a clenched fist. The defendant testified he knew that a blow was imminent and, indeed, he was hit by the victim. The defendant in self-defense hit back. The victim stumbled on the table, fell and hit his head hard on the floor. The defendant's coworker described the imminent punch to the defendant as happening so fast that the defendant had no time nor room to move. After the fight the defendant was grabbed by King employees. When the police came the defendant told them he had been attacked by the victim and that he was sorry.

2. *Discussion.* The majority recognizes that the judge erred in charging only as to the third prerequisite of self-defense where nondeadly force is used, namely, "the degree of force used was reasonable in the circumstances," and omitted the prerequisites that "(1) the defendant had 'a reasonable concern over his personal safety,' [and] (2) he used all reasonable means to avoid physical combat." *Commonwealth* v. *Franchino*, 61 Mass. App. Ct. 367, 369 (2004), quoting from *Commonwealth* v. *Baseler*, 419 Mass. 500, 502-503 (1995). See also Model Jury Instructions for Use in the District Court (1995), set forth in the margin.[3] Where I depart from the majority is that I consider that the

---

[2]Since one door of the double doorway was shut, one had to go through single file.

[3]As applicable at the time of trial, Instruction 6.07 (footnotes omitted) provided in part:

"A person is allowed to use reasonable force in self-defense when this is necessary to protect himself from physical harm. And therefore it is not a crime to strike at another person if this is done in reasonable self-defense.

". . .

omissions created a substantial risk of a miscarriage of justice. The majority think not and, indeed, they assert that the defendant benefitted from the omission.

The instructions have to be viewed in the context of the evidence, which is viewed in the light most favorable to the defendant, see *Commonwealth* v. *Colon*, 449 Mass. 207, 210, cert. denied, 552 U.S. 1079 (2007), and also in light of the arguments of counsel. In his closing, defense counsel stressed primarily the inconsistencies in the various accounts of the victim and only lightly touched on the law of self-defense saying that the judge would instruct the jury on the law.

The prosecutor, on the other hand, after twice stating that the defendant hit the victim so hard that he does not remember what happened, proceeded to discuss the law and the victim's injuries:

> "Now, there are three ways that the Commonwealth can prove that the defendant was not acting in self defense. First of all, it's important to explain that if one of the three are proven by the Commonwealth beyond a reasonable doubt, then that is enough to show that the defendant has not acted in self-defense. There are three ways. One of the three ways doesn't really hold up here, so I'm not going to go into that. But, do you believe that the defendant did everything that he could have to avoid physical force before he punched Mr. King? [*sic*] He could've walked away, he could've defended himself, he didn't have to punch back . . . ."

"The Commonwealth may show that the defendant did *not* act in self-defense by proving beyond a reasonable doubt that any one or more of the three requirements of self-defense were absent from this case. Those three requirements are:

"*First*: For the defendant to have acted in self-defense, he (she) must have reasonably believed that he (she) was being attacked or was immediately about to be attacked, and that his (her) personal safety was in immediate danger; and

"*Second*: For the defendant to have acted in self-defense, he (she) must have done everything that was reasonable in the circumstances to avoid physical combat before resorting to force; and

"*Third*: For the defendant to have acted in self-defense, he (she) must have used no more force than was reasonably necessary in the circumstances to defend himself (herself)."

The prosecutor did not discuss further the three ways, and continued:

"[J]ust because somebody punches, just because the victim allegedly punched the defendant, that doesn't mean that the defendant has the right to punch the victim back. He doesn't have the right to punch back, and he certainly doesn't have the right to use excessive force, *force beyond what was used against him.*" (Emphasis supplied).

The prosecutor concluded his argument on self-defense by comparing the injuries of the victim and of the defendant.

"Now, we heard the defendant take the stand. He didn't suffer any injuries that we heard of. There was no testimony about any injuries, but we do know about the victim's injuries in this case. So, we know that if the victim did indeed punch first, the *defendant punched back with force, excessive, beyond what was used against him, to the point where the victim suffered lacerations to the forehead, fractured eye socket, fractured facial fractures, you know, substantial injuries, where the victim says, or the defendant says, I was just punched in the face.*" (Emphasis supplied).

We turn next to the instructions on self-defense given by the judge. In their entirety they were as follows:

"Evidence in this case has been offered that the defendant acted in self-defense. In sum, a person may lawfully use reasonable force to defend himself from physical attack. Once evidence of self-defense is presented, the Commonwealth must prove beyond a reasonable doubt that the defendant did not act in self-defense. In other words, if you have a reasonable doubt whether the defendant acted in self-defense, your verdict must be not guilty. A person may use no more force than is reasonably necessary in all of these circumstances to defend himself or herself. Unreasonable or excessive force is force that is manifestly disproportionate under all of these circumstances. The question as to how far a defendant could go in defending himself or herself is for you, the jury, to decide.

"You may give new [*sic*] regard to the infirmity of human

impulses and passions. In considering the reasonableness of the defendant's conduct, you may consider evidence of the relative physical capabilities of the individuals involved in the incident. You may also consider how many persons were involved in each side. You may also consider the availability of room to maneuver or the means of escape from the area in question. The Commonwealth must prove beyond a reasonable doubt that the defendant acted with excessive force. Bear in mind the defendant does not have to prove anything. If there is evidence that he may have acted in self-defense, then the Commonwealth must prove beyond a reasonable doubt that the defendant did not act in self-defense. If you determine that the Commonwealth has failed to prove beyond a reasonable doubt that the defendant did not act in self-defense, you must find the defendant not guilty. In other words, if you have a reasonable doubt about whether or not the defendant acted in self-defense, your verdict must be not guilty."

As indicated, the judge only focused on the prerequisite that the defendant used no more force than was reasonably necessary in all the circumstances.

Our cases require that "[t]he jury must receive complete instructions from the trial judge, including an explanation of the proper factors to be considered in determining the issue of self-defense." *Commonwealth* v. *Shaffer*, 367 Mass. 508, 512 (1975). I disagree with the majority and the Commonwealth that the defendant benefitted by the omission.

The prosecutor's closing argument emphasized that the victim suffered serious injuries compared with the absence of any harm to the defendant, and argued that this disparity of injury indicated that the defendant used excessive force, "force beyond what was used against him." The judge laid stress only on the issue of unreasonable force, force that is "disproportionate" under the circumstances. He did not inform the jury what standard was to be used in assessing what force was disproportionate. See *Commonwealth* v. *Franchino*, 61 Mass. App. Ct. at 373. The extent of the injuries is not the proper criterion for determining whether the force used was excessive, and the jury may have been misled by the prosecutor's argument comparing injuries. The defendant's evidence of the threats received the

week before, the evidence that the victim came at the defendant with a clenched fist, and the evidence that the defendant could not retreat because the way was blocked all bore on the amount of force that was reasonable in the circumstances.

"In determining how much force one may use in self-defense, the law recognizes that the amount of force which he may justifiably use must be reasonably related to the threatened harm which he seeks to avoid." LaFave, Substantive Criminal Law § 10.4(b), at 145 (2d ed. 2003). The degree of force permitted cannot be determined without reference to the degree of danger. Thus, where the defendant has "reasonable ground to believe and actually . . . believe[s] that he [is] in imminent danger of death or serious bodily harm," he may use deadly force. *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980). Where, however, he only has "a reasonable concern over his personal safety," he may only use nondeadly force. See *Commonwealth* v. *Baseler*, 419 Mass. at 502-503.[4] Cf. *Commonwealth* v. *Fontes*, 396 Mass. 733, 734-737 (1986) (defendant's state of mind and reasonableness of his apprehension of safety can be difficult issues for the jury).

In sum, a defendant's reasonable apprehension is a crucial factor in determining what means are reasonably necessary to avert the threatened harm. If in this case the victim initiated the assault while the defendant was cornered in the area of the door so that the defendant in fact was reasonably concerned for his personal safety, "he had the right to use whatever means were reasonably necessary to avert the threatened harm." *Commonwealth* v. *Kendrick*, 351 Mass. 203, 211 (1966) (a case involving deadly force). In the context of the prosecutor's stress on the injuries received by the victim, the judge, by concentrating only on the degree of force used without mentioning the harm reasonably apprehended by the defendant and the lack of a means to avoid physical combat, inadequately instructed the jury. See *Commonwealth* v. *Shaffer*, 367 Mass. at 512; *Commonwealth* v. *Franchino*, 61 Mass. App. Ct. at 373. Cf. *Commonwealth* v. *Cataldo*, 423 Mass. 318, 325 (1996). The omission is particularly significant here where

---

[4]The second and third prerequisites of self-defense as stated in note 3, *supra*, are the same for deadly force and nondeadly force, the only difference being the degree of danger reasonably apprehended.

the victim's injuries were severe but their extent may have been accidental because there was evidence warranting the jury to find that the victim stumbled over a table, fell on a glass, and hit his head "hard" on the floor.

In my view the error created a substantial risk of a miscarriage of justice. Self-defense was the core of the defendant's defense.

> "An error creates a substantial risk of a miscarriage of justice unless we are persuaded that it did not materially influence[] the guilty verdict. In making that determination, we consider the strength of the Commonwealth's case . . . , the nature of the error, whether the error is sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been otherwise but for the error, and whether it can be inferred from the record that counsel's failure to object was not simply a reasonable tactical decision."

*Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999) (citations and quotation marks omitted). The Commonwealth's case was not particularly strong, and I consider it highly unlikely that the failure of defense counsel to object to the erroneous instructions was a tactical one. The error was "sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been otherwise but for the error." *Ibid.*