COMMONWEALTH vs. ROBERT V. EBERLE.

No. 10-P-1422.

Essex. October 18, 2011. - February 3, 2012.

Present: MILLS, MILKEY, & CARHART, JJ.

*Resisting Arrest. Practice, Criminal,* Instructions to jury. *Self-Defense. Evidence,* Self-defense.

At the trial of a criminal complaint charging the defendant with resisting arrest, the judge's failure to instruct the jury on self-defense gave rise to a substantial risk of a miscarriage of justice, where the facts of the case warranted such an instruction; where the strength of the Commonwealth's case was not overwhelming; where the defendant relied significantly on the self-defense argument during his testimony, creating a plausible inference that the jury's result might have been different if they had been properly instructed; and where defense counsel's failure to object to the lack of a self-defense instruction was not simply a reasonable tactical decision. [238-243]

COMPLAINT received and sworn to in the Peabody Division of the District Court Department on April 14, 2008.

The case was tried before *Benjamin C. Barnes*, J.

*Robert V. Eberle*, pro se.

*Ronald DeRosa*, Assistant District Attorney, for the Commonwealth.

MILLS, J. A District Court jury convicted the defendant of resisting arrest, G. L. c. 268, § 32B, while acquitting him of three counts of assault and battery on a police officer, G. L. c. 265, § 13D. The defendant argues that the judge erred by not instructing the jury on self-defense, and that this error gave rise to a substantial risk of a miscarriage of justice. We agree and therefore reverse the conviction and remand for a new trial.[1]

---

[1] The defendant also argues that the judge erred by not specifically instructing the jury that they could not consider his actions prior to the moment he believed he was under arrest, when determining if the Commonwealth had

*Facts.* The following facts are uncontested. On April 11, 2010, Lynnfield police received a dispatch regarding a potential domestic disturbance at 6 Timberhill Lane in Lynnfield (residence). Three Lynnfield police officers — Burnham, Materazzo, and LaBonte — arrived at the residence around 6:45 P.M. The officers each drove marked cruisers and wore police uniforms. The officers knocked at the front door, and when they did not receive a timely response, Materazzo and LaBonte went around each side of the house to investigate further. Burnham remained at the front door, and after approximately one minute, the defendant's wife answered the door.

She was visibly upset, and she identified herself as the 911 caller. Materazzo heard her answer the door and rejoined Burnham at the front door. Mrs. Eberle said that she wanted her husband to leave, although she never accused him of physical violence. At this point, the defendant appeared from a back room and walked toward the front door, yelling at the officers to leave his house. The officers attempted to separate the defendant from his wife to ascertain their stories independently, standard procedure in domestic disturbance investigations. Burnham addressed the defendant, and Materazzo addressed Mrs. Eberle. From this point on, the defense testimony differs materially from the prosecution testimony. We will recite each version of the facts as presented by the evidence.

1. *Commonwealth's evidence.* Burnham and Materazzo each described the altercation. LaBonte was outside when the commotion began, and he entered the residence mid-struggle. Burnham approached the defendant while Materazzo approached Mrs. Eberle. They each testified that the defendant resisted Burnham's advance, the officers put the defendant against the wall, the three went to the ground, and then the officers hand-

---

adequately proved he resisted the arrest. Because we reverse based on the first claimed error, we need not analyze the second in detail. This issue may arise at retrial, however, and we note that the judge quoted the model jury instruction for resisting arrest verbatim. Criminal Model Jury Instructions for Use in the District Court, Instruction 7.460 (2009). The defendant has not argued that the model instruction is defective or inapplicable to the facts of this case, and he has therefore failed to demonstrate reversible error. *Commonwealth* v. *Stewart,* 460 Mass. 817, 825 (2011). Cf. *Commonwealth* v. *DiPadova,* 460 Mass. 424, 434-436 (2011) (holding that the defendant had demonstrated unique facts requiring a deviation from the model instruction).

cuffed the defendant and escorted him outside. On the details, however, the officers' testimony was inconsistent.

In Burnham's version of events, he physically contacted the defendant and tried to push him back into the house. The defendant shrugged him off and then pushed Burnham twice in the chest. Each time the defendant broke contact, Burnham grabbed his arm again. After the second push, Burnham decided to arrest the defendant, and he and Materazzo put the defendant against the wall. The defendant shoved against the wall, causing all three men to fall to the ground. Burnham and Materazzo gained control of the defendant's hands, which were under his body, while LaBonte reentered the house.

Materazzo described a much more violent event. He saw the defendant shove Burnham before Burnham had touched him and then punch Burnham as he was guiding the defendant down the hall. In response, Burnham and Materazzo placed the defendant against the wall, and the defendant head-butted Materazzo. Materazzo intentionally decided to wrestle the defendant to the ground and yelled to Burnham to take him down. During the struggle, the defendant was trying to hit the officers and push them against the wall. Eventually LaBonte entered, and the three officers were able to subdue the defendant.

LaBonte testified that when he entered, he saw the officers trying to gain control over the defendant. The officers were trying to pull his hands out from under his body, and the defendant was kicking his legs. LaBonte approached, the defendant kicked him, and LaBonte used his baton to gain control of the defendant's legs. Once under control, the officers escorted the defendant outside.

2. *Defendant's evidence.* The defendant testified that Burnham shoved him back inside the house, toward the kitchen, for approximately fifteen feet. After six to eight shoves, he finally told the officer to stop and raised his hands to protect his chest. At that point, Burnham said some combination of "that's it" and "you're going down," threw the defendant against the wall, and then threw him to the floor, face down. Materazzo also jumped on the defendant. As the defendant fell, he felt a sharp pain in his elbow, which he described as the worst pain he had ever experienced.

When LaBonte entered, he joined the fray, striking the defendant's legs with a baton in an attempt to subdue him. The defendant was struggling against the officers, believing that they were trying to pull his arm out of his socket and trying to "kill him." Eventually the officers pulled the defendant's arms behind his back and handcuffed him, at which point they completed his arrest and transported him to the police station. The defendant did not believe he was under arrest until he was led outside to the police cruiser.[2] After the arrest, he was transported to a hospital by ambulance. Medical staff determined that his elbow had been dislocated, and his arm was placed in a cast. He was administered medication including two shots of morphine.

The defendant raised defenses of both accident and self-defense in his testimony. He argued that he had no intention of striking the officers or resisting arrest but was simply flailing in pain due to his dislocated elbow. He also argued that he was justifiably defending himself against the officers' excessive force. He initially requested instructions on both accident and self-defense, but he did not submit proposed instructions or object when the judge instructed on the accident defense only.

*Discussion.* 1. *Instruction on self-defense.* Ordinarily, where a defendant requests a self-defense instruction, and the judge denies that request, he has preserved the error for appellate review. See *Commonwealth* v. *White*, 452 Mass. 133, 137-138 (2008). The transcript here shows that while defense counsel orally requested the self-defense instruction, he did not submit proposed instructions to the court or the prosecutor. The judge deferred ruling on the request until all the evidence was presented. When the judge finally read the instructions at the end of the trial, he did not include a self-defense instruction, presumably rejecting the defendant's request. The defendant did not renew his request or object to the instructions at that time. We have held that under this specific set of circumstances, the defendant

---

[2]We express no judgment on the relative credibility of the defendant's version of events as compared to the officers' version. We do note that responses to domestic disturbance calls often present to police an acute set of delicate and high risk issues. The descriptions of the encounter between the defendant and the officers are contradictory among the officers' testimony, and between the officers' and defendant's testimony. With this in mind, we have carefully sifted through the testimony regarding the differing versions of events.

has not preserved the error. Thus, we must review for a substantial risk of a miscarriage of justice. *Commonwealth* v. *King*, 77 Mass. App. Ct. 194, 197 (2010) (holding that the error was not preserved where defendant orally requested a self-defense instruction, did not submit written proposed instructions, and failed to object when the judge instructed the jury).

"[A] defendant is entitled to [a self-defense instruction] 'if any view of the evidence would support a reasonable doubt as to whether[, taking all reasonable inferences in his favor,] the prerequisites of self-defense were present,' . . . to wit: (1) the defendant had 'a reasonable concern over his personal safety,' [based upon the officers' use of unreasonable or excessive force]; (2) he used all reasonable means to avoid physical combat; and (3) the degree of force used was reasonable in the circumstances, with proportionality being the touchstone for assessing reasonableness." *Commonwealth* v. *Franchino*, 61 Mass. App. Ct. 367, 368-369 (2004) (citations omitted). See *Commonwealth* v. *Graham*, 62 Mass. App. Ct. 642, 651-654 (2004). "The evidence bearing upon self-defense may be contained in the Commonwealth's case, the defendant's case, or the two in combination." *Commonwealth* v. *Galvin*, 56 Mass. App. Ct. 698, 699 (2002), citing *Commonwealth* v. *Rodriguez*, 370 Mass. 684, 688 n.5 (1976). "In determining whether sufficient evidence of self-defense exists [to warrant submission to the jury], all reasonable inferences should be resolved in favor of the defendant, and, no matter how incredible his testimony, that testimony must be treated as true." *Commonwealth* v. *Pike*, 428 Mass. 393, 395 (1998).

In this case the defendant was entitled to an instruction as suggested by the court in *Commonwealth* v. *Urkiel*, 63 Mass. App. Ct. 445, 452 (2005), quoting *Graham*, *supra* at 654 n.7.

> "The gist of the instruction would provide as follows: If there is evidence of excessive or unnecessary force by police in making an arrest, the Commonwealth must prove beyond a reasonable doubt (1) that the arresting officer did not use excessive or unnecessary force in making the arrest. If the Commonwealth satisfies this burden, then the defendant has no right to engage in self-defense. If the Commonwealth fails to prove that excessive or

> unnecessary force was not used by police, and there is evidence of self-defense, then the Commonwealth must prove beyond a reasonable doubt (2) that the defendant did not act in self-defense, or (3) that force used by the defendant in self-defense was unreasonable or excessive in the circumstances. See *Commonwealth* v. *Kendrick*, 351 Mass. 203, 211 (1966); [*Rodriguez, supra* at 692 n.10]."

First, the defendant testified that the officers shoved him, threw him against the wall, and threw him to the floor, without any provocation or evidence that he was being violent. See *Commonwealth* v. *Miranda*, 77 Mass. App. Ct. 76, 80 (2010) (defendant raised an issue of excessive force where her testimony suggested that the officer threw a third party to the ground and put his knee in her back).[3] Second, the defendant testified that when he was on the ground and in excruciating pain, he felt like the officers were trying to rip his arms out of their sockets. See *Graham, supra* at 650 (defendant had a reasonable concern for his physical safety where he was on the ground trying to protect himself from a police beating). Finally, the defendant testified that he backed up to avoid Burnham, and when he finally stood his ground, he was thrown to the floor, where he was pinned with no opportunity to retreat. *Ibid.* See *Galvin, supra* at 700 (defendant had no opportunity to retreat where she was pinned on the ground by the victim). On the facts of this case, taken in the light most favorable to the defendant, we conclude that the judge erred in not instructing on self-defense.

2. *Significant risk of a miscarriage of justice.* "An error creates a substantial risk of a miscarriage of justice unless we are persuaded that it did not 'materially influence[ ]' the guilty verdict. In making that determination, we consider [1] the strength of the Commonwealth's case against the defendant[,] . . . [2] the nature of the error, [3] whether the error is 'sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been otherwise but for the error,' and [4] whether it can be inferred 'from the record

---

[3]In *Miranda, supra,* the defendant was charged with assault and battery on a police officer. The defendant asserted justification through defense of another, namely her friend who was subject to the allegedly rough arrest.

that counsel's failure to object was not simply a reasonable tactical decision.' " *Commonwealth* v. *Palmer*, 59 Mass. App. Ct. 415, 425 (2003), quoting *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999). When considering a failure to instruct on self-defense, a substantial risk of a miscarriage of justice occurs when the defendant was deprived of his primary argument of defense, *Franchino, supra* at 376, citing *Commonwealth* v. *Lapage*, 435 Mass. 480, 487-488 (2001), or where the lack of the instruction relieved the Commonwealth of its full burden of proof. *Galvin, supra* at 702.

First, the strength of the Commonwealth's case was not overwhelming, as evidenced by the officers' testimony. Their testimony conflicted as to whether they took the defendant to the ground intentionally or accidentally, and whether the defendant punched at Burnham or merely raised his hands to push him away. This would tend to undercut the officers' credibility, upon which the Commonwealth's entire case was based. Cf. *Commonwealth* v. *King*, 460 Mass. 80, 88-89 (2011) (concluding that there was no significant risk of miscarriage of justice where, inter alia, the strength of the Commonwealth's case was based on the significant credibility of the victim, witness, and police sergeant). The officers' testimony is also sharply distinct from the defendant's testimony. The defendant's testimony describes his resistance as occurring only once he fell to the ground, while the officers testified that he resisted throughout the entire encounter.[4]

Considering the second and third factors together, the error was significant and creates a plausible inference that the jury's result might have been different without the error. Where entitlement to a self-defense instruction is fairly raised from the testimony, as we conclude that it was, the Commonwealth has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. *Rodriguez, supra* at 688. The absence of the necessary instruction here relieved the Commonwealth of this burden, creating a significant error. See *Galvin, supra* at 702.

---

[4]The fact that the jury acquitted the defendant on the three charges of assault and battery on a police officer suggests that they found credible some material portion of his testimony.

Further, the defendant relied significantly on the self-defense argument during his testimony. We disagree with the Commonwealth's argument that the defenses of accident and self-defense are mutually exclusive. Instruction on each theory may be warranted if required by the evidence. *Commonwealth* v. *Zaccagnini,* 383 Mass. 615, 616 n.2 (1981), citing *Commonwealth* v. *Barton,* 367 Mass. 515, 517-518 (1975). The defendant is entitled to argue, "I didn't do it . . . but if I did . . . it was self-defense," *Commonwealth* v. *Hakkila,* 42 Mass. App. Ct. 129, 130 (1997), which is a fair description of the defendant's testimony in this case. His testimony may also be fairly read as defending against the assault and battery on a police officer charge on a theory of accident, and the resisting arrest charge on a theory of self-defense. In this manner the defenses are not logically inconsistent, in that he is arguing that he was justifiably resisting arrest, and his resistance accidentally caused him to contact the police officers. Taken in this light, a self-defense instruction would be an essential line of defense against the resisting arrest charge, see *Franchino, supra* at 376, creating a plausible inference that the jury's result may have been different if they had been properly instructed.

Addressing the fourth factor, we can infer from the record that the failure to object to the instruction was not simply a reasonable tactical decision. As this was a one-day trial, the judge informed the parties that he would begin work on the jury instructions during the lunch recess. Prior to the recess, which occurred during the Commonwealth's case, the judge asked each side if they would be requesting any specific instructions. The defendant's lawyer asked for an instruction on self-defense as an issue that developed out of the Commonwealth's testimony. The judge reserved his decision until the close of testimony, and the defendant's attorney did not renew his request or object to the instructions, which were given without a self-defense element. Given the fact that the attorney requested the self-defense instruction, the record strongly suggests that his failure to object was not a tactical decision not to pursue a theory of self-defense.[5]

---

[5]The defendant submitted an affidavit from his trial attorney, stating that his failure to object to the jury instructions was not a tactical decision. The Com-

For these reasons, we conclude that the judge's failure to instruct on self-defense was error, and that the error created a significant risk of miscarriage of justice.

*Conclusion.* The judgment is reversed, and the jury verdict is set aside. The case is remanded for further proceedings consistent with the opinion of the Appeals Court.

*So ordered.*

monwealth's brief argues that the affidavit should be discredited, but because we do not rely on the affidavit, we need not reach the Commonwealth's argument on this point.